THIS is an action on a bill of exchange against the defendants in error, as indorsers by their partnership name, they being co-partners in trade. Each pleaded severally, nil debet, and one of them pleaded non est factum, in the usual form of that plea, when applied to sealed obligations, by which it is supposed, he intended to deny making the endorsement. On the trial the plaintiffs gave in evidence a bill of exchange, drawn by David Dodge on John Wilkinson, in favor of Silas W. Robins, ^'endorsed, first by him, then by Elijah Crosthwait, and lastly by Robert Brooking & Co. the company name of the defendants, at ninety days after *42 date, payable at the United States’ Bank in Philadelphia, and accepted by Wilkinson. The drawer, drawee and endorsers, all lived in Clarke county in this state. He next gave in evidence, a protest of the bill for nonpayment, by a notary public in Philadelphia, dated on the last day of grace, certifying, in due form, the presentment and dishonor of the bill on that day, at the proper place. They next proved the hand writing of all the parties concerned, and that the name of the firm of the defendants, was in the hand writing of one of the firm : That the bill was first presented at the banking house of the plaintiffs for discount, without the endorsement of the defendants ; but was rejected, and taken away, and afterwards brought back with their endorsement, and discounted at the instance of the drawee, to whom the money was paid on the credit of the defendants: That this discounting took place at the branch bank of the plaintiffs, in Winchester, by the cashier and one other individual, who were authorized by the board to purchase bills : That, at the' end of fifteen days after the protest, both it and the bill were received by mail, addressed to the. cashier of the branch bank, who deposed that that was the usual time for the travelling of the mail, and that he had received many bills, from the same place, which had come in that time after protest. The arrival of the bill and protest, was late on the evening of the fifteenth day, and early next morning the cashier went to the counting house ot the defendants, as he deposed, with the bill and protest in his hand, where he found one of the defendants, and informed him of the protest and return of the bill, and was strongly impressed, that he gave the notice in writing. As to this, he could not speak with certainty ; but was strongly impressed with the conviction, that a notice in writing was given, as it was his constant habit to give such notices in writing, and he believed, that the endorsers could not be made liable, without written notice; and he remembered of walking from the counting room of the defendants to the post office, and putting in a notice for one of the other endorsers, who was rhen at some distance.
The defendants then introduced the drawee of the bill, who deposed, that he procured the endarsement ©f the defendants, who had before frequently endorsed for him, .and he for them, and that sometimes one, and *43 at others the other partner endorsed the name of the company alternately, and one of them, ip like manner, had made this endorsement, which was for his, the drawee’s benefit, and he accordingly drew the money : That he and the defendants had not. made any positive arrangement, by any meeting for the purpose of agreeing to endorse for each other; but had always, before that time done as stated, having a mutual confidence in each other. The defendant, who had pleaded non est factum, introduced an article of co-partnership between him and his partner, in which is a stipulation that neither party should be permitted to make any contracts of importance binding the firm, without the consent of the other, and neither should endorse their private name, or name of the company, on any paper made negotiable at any bank, or become security for any person to any large amount, except with the consent of the other; and in case of endorsements made with consent, if one should become dissatisfied therewith, such endorsement should be discontinued as soon as possible. This article was made previous to the endorsement, in question.
Thepurchase of a bill of. the officers*^ of a branch bank, author^gCt^s mate such purchases, is a^C0?‘ÍÍiPs ^ y
2. On this evidence, the counsel for defendants, moved the court to instruct the jury, that if they believed, from the evidence, that a written notice of protest had not been given to the defendants, or one of them, the law was for the defendants. This instruction was opposed by the plaintiffs, who insisted, that without written notice, they were entitled at least to recover the principal. But the court gave the instruction as asked, an'd the plaintiifs excepted, and this is the first question presented for the decision of this court.
3. The court below, and indeed the parties, seem to have labored under the impression, that this instru ment was to be treated as an inland or domestic bill; which idea must have arisen, 1st either from the be lief that the bill was not properly discounted, having been purchased, by the authority of the board, by the cashier and president; or, 2dly. because the act of as seoibly regulating bills of exchange, which in some cases, speaks of notice in writing, applied to the case; or, 3dly, because the parties reside in this state. Nei ther of these circumstances authorized the application to this instrument, of the doctrines regulating inland bills of exchange. We have no doubt; that the- sash? *44 ’ ier and president might purchase hills, if authorized so to do, and .that their purchases were properly discounting them, which is a mercantile name for purchasing paper of this description, for somewhat less than the nominal amount. Neither can the act of assembly, regulating bills of exchange, influence this question. For it directs notice in writing only in cases of inland and domestic bills, and that for the purP°se of subjecting the party to. damages, or to give a statutory remedy, which does not impair any other remedy of the common law, which may exist. Nor can residence of the parties here, fix the grade of this bill. It is true, the act of assembly alluded tos describes such bills not under the appellation of foreign bills. But the charter of the bank (3 Litt. 390) declares, that all bills and notes discounted by 1he corporation, shall be placed on the footing of foreign bills of exchange, and shall have the like remedy, with like effect, éxcept as to damages. This is decisive of this question, and proves conclusively, that the doctrines regulating foreign bills, must apply to and govern this controversy, whatever might have been the grade of this bill,' in the hands of an individual.
1 Dig. 192.
A bill thus discounted* occupies the rank of a this state. u foreignbiiiof exchange, notwithíhepardesto itresidein
1 D.ig. 144
ry"to1,'entufó tie holder to recover aIrawer and endorsers; verbal notice is sufficient. Q.n ajich a bill being ' protested, notice in writing of the dishonor, is not iv-cessa-
4. The question then remains, is a notice in writing necessary to recover on a foreign bill, or is a verbal notice sufficient ? It Is true, the books, when speaking of no. tice on such bills, generally speak of notice in writing 5 and the reason is obvious — because the parties to it must, from its nature, generally reside abroad, and therefore, the message could besentbestin writing. Butit does not thence follow, that if the notice could be conveniently gi-. ven verbally, it would be insufficient. The reason of no-^ice’casts some light on this subject. It is for the purpose, °f enabling endorsers to hold any indemnity they may have, or acquire one if they have none. Why will not a verbal notice answer this purpose ? Notice is said to be sufficient, if it apprizes the party of his liability. • We have been able to discover no authority against a verbal notice, and where the parties are so situated, that it can be given with certainty, there is .no reason why it shall not be held valid. Hence, on notes and inland bills, such notice has been held good — Chit, on Bills,'Amer. Ed. 276,277. It therefore follows, that; the instruction of the court below, treating this instrument -not as a foreign hill* and laying a stfess oh tii§ *45 want of a written notice, is erroneous, and cannot be sustained.
If one of the. j^^tsbeen in the 1)abit rf endorsing the name of change,as se. curity, u is a the le. gaily infer, that he had er partners so to do, and ought to be° admitted,
The bona |freahv0a'^ayie consideWtion, without a'^1|<?eao°g^ doiéchwilí recover the Sl’"*st a11 the withstanding the endorsement oi tlie name ot the press!ySpro' hibiiedin the anides of partnership,
*45 5. The court also further, at the instance of the defendant, Brooking, who denied the endorsement, structtd the jury, that if the endorsement of the com pany name by his partner, was not done in the line of the business of the firm, then Brooking was not bound by it, and the jury ought to find for him.
Considering this instruction as hypothecated upon the. evidence given, and admitting the abstract princi pie it contains, to be correct, it canuot be supported. For, if one partner could not, in general, bind another, except with regard to partnership transactions, yet they may be so in the habit, by an understanding be tween them, of endorsing their company name on the paper of others, (as was in fact the case here, by their own evidence,) as to raise a presumption of a tacit thority, which the jury may find, with regard to en dorsements for other purposes. And it is evident, that the instruction given, took.from the jury the conside. ration of this eúdence. and taught them, that not with., standing their mutual habit of endorsing alternately, their company name, to accommodate the drawee; yet the partneiship could not be bound, unless itrela ted to some negotiations with regard to their own part, nership transactions,. On the contrary, the law is clear, that ah autlioritymay be implied and inferred, from the former conduct of a partner, or principal, in permit, ting his name to be endorsed, and no special authority in each particular case, is necessary. Such previous acts, as were proved on this occasion, were sufficient to authorize such a presumption, and the force of them ought not to have been excluded — Chit, on Bills, 34.
6. But we are far from admitting the general prin. cipie assumed in this instruction, to be correct, even if such evidence was wanting. St was proved, that the bank had actually discounted the bill, for a valúa, hie consideration, and that on the credit of the appel. lees, as endorsers. Of course, the institution stands in the attitude of a bona fule holder of the bill. And in such case, it is said, Chit, on Bills,35, “That by custom of merchants, long established as law, if one partner draw, accept, or endorse a bill or note, in the name, or as on behalf of the firm, such act will render all the partners liable to a bona, fide holder, although *46 the other partners were ignorant, of the-transaction, an(j Were even intentionally defrauded by their part-nor.” And again, in the same page, it is said, that “whenever a bill is drawn, accepted, or endorsed by one of several partners, as on behalf of the firm, during the existence of the partnership, and it gets into the *1:in(*s °f a bona fide holder, the partners are liable to* him, though in truth, one partner only negotiated it for his own peculiar benefit, without the consent of his co-partners; and this rule prevails, although by the terms of the partnership deed, the partners were prohibited from circulating any bills or notes, if the holder was ignorant of that circumstance, at the time he received the same.” Now it seems evident, that the bank was wholly ignorant of the restrictive clauses in the partnership article in this case, and her agents might never have seen it, until it was produced on this trial, by any thing appearing in this cause. If such be the Jaw of merchants, with regard to such instruments, it is clear, that this instruction of the court, was wholly erroneous. The decision on these points, renders it wholly unnecessary to say any thing on the evidence spread on the record, after the motion for a new trial was overruled. It is evident, from the decision already given, that a new trial ought to have been granted.
The judgment must, therefore, be reversed with costs, and the verdict set aside, and the cause be remanded for new proceedings, not inconsistent with this opin. ion.