## THE BANNER TOBACCO COMPANY v. LUMAN JENISON AND LUCIUS JENISON.

*Chattel mortgage on stock of goods—Agency to buy stock—Assent of partner —Partnership business—Special questions.*

An insolvent debtor made a chattel mortgage on his stock of goods to a particular firm of creditors who did business in another town, and recorded the mortgage without their request or knowledge. One of the firm, however, took nominal control of the business, putting their sign over his door and starting a bank account in the firm name, but leaving him to carry on the store as their agent, with the caution not to get it in debt. The agent carried on the business for over four years and made purchases on credit, and one from whom he had so purchased afterwards brought suit against the firm for the purchase price of goods. *Held*, that very slight circumstances of knowledge or assent on the part of the other partner ought to be enough to make the firm responsible for acts done by the agent while keeping up the stock in the usual way.

Where one member of a firm has taken a chattel mortgage on a stock of goods to secure a debt to the firm, he has authority, as partner, to take goods in payment of the debt and to create an agency for selling

them by putting them in the mortgager's charge, and if he thinks that keeping up the stock is the best way to sell the goods to advantage, slight evidence of his partner's assent is enough to make the firm responsible for the agent's acts in purchasing goods for that purpose. And secret instructions to the agent will not enable them to escape responsibility for acts which, in the usual course of the business, the public would have a right to understand were authorized.

Where a firm doing business in one place take charge, under a chattel mortgage, of the business of an insolvent debtor in another place and leave him to carry it on in their name, it is not negligence for others to sell to the agent on the responsibility of the firm without inquiring into the agent's authority; the firm must take the risks of the arrangement, which is of a questionable nature.

The question whether the carrying on of a specified business is within the scope of a partnership is a question of law rather than of fact.

It is not error to reject a special question to the jury where it involves law rather than fact and is covered by instructions.

Inconclusive special questions to a jury may be rejected.

Error to Kent.    Submitted April 21.    Decided June 14.

Assumpsit.    Defendants bring error.    Affirmed.

*J. C. FitzGerald* and *Allen C. Adsit* for appellants.

*Taggart, Stone & Earle* for appellee.

Cooley, J.    This is an action of *assumpsit* originating in justice's court, appealed to and tried in the circuit court, where the plaintiff had judgment. The defendants bring it here by writ of error.

The following facts will present the general features of the case. On June 26, 1875, the defendants were in business together as millers at Jenisonville, near Grand Rapids, under the partnership name of L. & L. Jenison. One B. F. Emery was at the same time in business selling groceries, flour and feed at Whitehall, and was indebted to defendants in upwards of a thousand dollars. He was indebted to others also, and it is inferable from the record that he was insolvent. Under these circumstances he executed and put on record a chattel mortgage of his stock to defendants, with-

out their request or knowledge, and then telegraphed them to come to Whitehall. Mr. Luman Jenison, who had personal charge of the milling business, received the telegram and went to Whitehall in response to it. When there an arrangement was made between him and Mr. Emery under which the apparent ownership of the stock of goods was placed in the firm of L. & L. Jenison, and their name placed upon the store as is usual to indicate proprietorship. Mr. Emery was then to go on and sell the stock in the usual course of business as their agent, keeping it up by new purchases as should be found needful. Luman Jenison in his testimony says that no purchases were to be made on credit, and all authority to use the credit of the firm was expressly withheld. Emery denies this, but admits he was cautioned not to get the store in debt. He bought, however, from time to time on credit, and among other purchases made of the plaintiff the purchase of cigars, the bill which is the subject of this suit. Luman Jenison at the time of the arrangement opened a bank account for Emery in the name of L. & L. Jenison with a banker at Whitehall, and Emery procured letter and bill heads in the same firm name which were used by him.

The business continued under this arrangement until the fall of 1879 ; Emery and Luman Jenison evidently understanding that, though Emery was ostensibly agent, he was really as between the parties themselves only mortgagor, with permission to sell the mortgaged goods to pay the debt. He did not, however, during all this time reduce the debt, but on the other hand received flour from defendants for which he paid only in part. Meantime he took the benefit of the bankrupt law, and received his discharge. On September 11, 1879, Luman Jenison went to Whitehall and, with the concurrence of Emery, sold out the stock to one Banks, realizing therefor less than the sum due his firm. Subsequently the account of the plaintiff was presented to him for settlement, and he refused to recognize any liability upon it. It was then put in suit.

If the plaintiff's case is weak in any point it is in the evi-

dence to connect Lucius Jenison with the arrangement whereby Emery was made agent for carrying on the business at Whitehall. The circuit judge correctly instructed the jury that if the action of Luman Jenison was taken, and the business subsequently carried on in the name of L. & L. Jenison, without the knowledge of Lucius at the time or his subsequent ratification, there could be no recovery in this action; but that if Lucius authorized it, or knew how the business was being conducted and did not dissent, then both were bound to the extent of the agency Luman undertook to create. He also instructed them that merely leaving Emery in possession with instructions to sell the goods, would not give him authority to purchase goods on credit. This instruction was as favorable as defendants could ask, and we find no requests refused which we think the defendants entitled to.

It is conceded that the authority of Luman Jenison as a partner in the mill did not empower him to engage the firm in another and independent business without the consent of his associate. It was a very important fact, however, that the debt for which Luman Jenison assumed to take security in the peculiar manner above described was a partnership debt. He undoubtedly had authority to take goods in payment, and to create an agency for the purpose of selling off the goods so taken. And if in his opinion keeping up the stock for a time was the best means of enabling the goods to be sold to advantage, very slight circumstances of knowledge or assent on the part of his co-partner ought to be sufficient to make the firm responsible for the acts of the agent in keeping up the stock in the usual way. Secret instructions to the agent under such circumstances cannot avail; it would be a reproach to the law if it could suffer a principal to escape responsibility for those acts of the agent which according to the usual course of the business in which he was engaged, the public had a right to understand were authorized. There was abundant evidence in the case to charge Luman Jenison, and we think there was also enough from which the jury might infer that Lucius Jenison could

not have been ignorant of the business carried on so long in the name of his firm.

It was urged on the part of the defence that as the defendants had a known place of business which they personally managed, and which was altogether different from that carried on at Whitehall, the plaintiff was guilty of negligence in making sale to Emery without first communicating with defendants and learning from them directly what was the extent of Emery's agency. We think, on the other hand, that the negligence, if any, was all on the other side. The arrangement under which L. & L. Jenison became apparent owners, while as to Emery they were mortgagees only, and under which Emery for several years was enabled to carry on business though a bankrupt, was more than questionable in its nature, and if it landed the parties in trouble it was what they ought to have anticipated. The plaintiff sold its goods in the usual course of trade, and with no reason to doubt that Emery had the authority he professed to have, and which one of the defendants at least, according to the evidence which the jury believed, had done what he could to confer.

At the request of the defendant several questions were submitted to the jury for special findings. Some of them they answered and some they did not. It is agreed that some of them, if answered as defendants claimed they should be, would have been inconsistent with the general verdict for the plaintiff, and that the court erred in not requiring answers to all. The questions and the action upon them are as follows:

"1st. Did not Luman Jenison, at the time Emery was left in possession of the store on or about June 26, 1875, expressly state to said Emery not to get in debt? No.

2d. Did the defendant ever authorize Emery to purchase goods in their name or credit? Unable to determine.

3d. When and by whom was Emery ever authorized to buy goods on credit in the name of L. & L. Jenison? Unable to determine.

4th. Did not the defendants at the time they left Emery in possession of the store June 26, 1875, expressly forbid him from purchasing any goods on their credit? No.

5th. Did not the defendants by Joseph Blake, on or about the first day of November, A. D. 1875, expressly forbid Emery from purchasing any goods on credit? No.

6th. Did Lucius Jenison know prior to September, 1879, that Emery was carrying on this store at Whitehall in the name of L. & L. Jenison? Yes.

7th. Was the carrying on of this store at Whitehall within the scope of the partnership of L. & L. Jenison? This the court instructed the jury they need not answer.

8th. Did Emery make an actual sale of the property covered by the chattel mortgage to L. & L. Jenison on or about June 26, 1875? Yes.

9th. If you find that Emery made an actual sale of this property to L. & L. Jenison, on or about June 26, 1875, what were the terms of such sale; the price agreed upon and when and how to be paid? Unable to determine.

10th. Was not Emery left in possession of the goods under the chattel mortgage? No.

11th. Was not Emery merely left in possession of the goods under the chattel mortgage with permission to sell the same, and after applying sufficient amount thereof upon said mortgage to satisfy the same to have surplus? No.

12th. Were there any cigars received from the plaintiff in the store at the time the stock was sold to Banks, and if so, how many? Unable to determine.

13th. If you find there were cigars from this purchase from the plaintiff in the store at the time of the sale to Banks, how many cigars were there and what witness testified thereto? Unable to determine."

The court was right in declining to put the seventh question, which involved law rather than fact, and upon which he had in substance given the jury instructions in accordance with the views of the defence. All the questions which remained unanswered might also have been excluded, for

none of them was conclusive.   This being so, the failure to require an answer was not error.

We have noticed all the assignments of error which we think plausible, and find them not supported.

The judgment must be affirmed with costs

CAMPBELL and MARSTON, JJ. concurred.