## ILFELD and others *v.* STOVER.

### (*Supreme Court of New Mexico.* January 5, 1887.)

PRINCIPAL AND AGENT— EVIDENCE OF AGENCY—GRATUITOUS PERMISSION TO TAKE OUT LICENSE IN DEFENDANT'S NAME.

S., the defendant, a member of a firm of grocers in Albuquerque, took a conveyance of a store from E., in satisfaction of a debt. E. had a stock of liquor in the building, and requested S. to let him take out a license in S.'s name, in order to retail the same, to which S. consented, and the license, when so taken out; was posted conspicuously on the premises. S.'s permission was gratuitous, and he had no interest in the business; and he never ratified any act of S. as his agent. I. & Co., the plaintiffs, were another firm of grocers in the same town, and their place of business was within two blocks of defendant, and connected with his firm by telephone. E. purchased a bill of goods of plaintiffs, representing himself as the agent of defendant, S., and the bill was entered in plaintiffs' books as sold to S. The bill was not presented to S. for more than a year after it was bought. *Held*, no agency, express or implied, was shown as existing between E. and S., on which plaintiffs could recover against S. for the goods sold by them to E.

Appeal from district court, Bernalillo county.

*Bell & Field,* (*Neill B. Field,* of counsel,) for appellants, Ilfeld & Co.

*Wm. H. Whiteman*, for appellee, Stover.

HENDERSON, J. Appellants, Ilfield & Co., brought *assumpsit* against appellee, Stover, in the district court of Bernalillo county, to recover the price of a bill of goods, consisting of groceries, liquors, etc., sold and delivered by them to one William Eront, as the agent of Stover. The amount claimed was $363. The jury having been discharged under a stipulation filed in the cause before the conclusion of the trial, the issue was tried by the court, with a finding and judgment for the defendant. The finding for the defendant is assigned as error, and presents the only question for our consideration.

The facts may be stated, in substance, as follows: On the fifteenth day of June, 1883, William Eront purchased a bill of goods from the plaintiffs, Ilfeld & Co., representing himself as the agent of defendant, Stover. The bill was entered in the books of appellants as sold to Stover. Some time prior to this purchase Eront was doing business in Albuquerque, under the name of Pedro Montanio. The building in which the business was carried on originally belonged to Eront. He had, however, contracted a debt with Montanio, to secure or pay which he executed some kind of conveyance. Afterwards, and before the date of the purchase of the goods from Ilfield & Co., the debt due Montanio was paid, but in the mean time Eront had contracted a debt of several hundred dollars with the firm of Stover, Crary & Co., of which appellee was a member. By the consent of Eront, Montanio conveyed the building to Stover in payment of or security for the debt due Stover, Crary & Co. The record does not distinctly disclose the nature of these conveyances. At the date of the conveyance from Montanio to Stover, a quantity of beer remained in the house, which still belonged to Eront. Stover did not know there was any beer in the house. He did not claim it as embraced in the sale from Montanio. Eront applied to Stover, as a gratuitous favor, to permit him to take out a United States retail liquor license in Stover's name, in order to sell off the beer profitably to himself, and thereby pay his debts. After some hesitation, Stover gave him permission. Both United States and territorial liquor licenses were procured in Stover's name by Eront, and posted conspicuously in the place of business run by him. The exact nature of this business does not appear, further than as indicated by the beer on hand, and the kind of goods purchased from Ilfeld & Co.

Eront swore on the trial that he was Stover's agent. Stover swore that he was not. There was not a single fact or circumstance testified to by Eront making it probable that he was appointed Stover's agent for any purpose. Stover had no interest whatever in the business carried on by Eront. He had no use for an agent. If an agency, such as testified to by Eront, was created by Stover, it can rest upon no other reasonable foundation than that Stover, without interest to himself, or expectation of any benefit whatever, undertook to set Eront up in business on his capital and credit. This is unreasonable. It is conceded in argument that Stover is a highly reputable citizen, and worthy of credit as a witness. His testimony is reasonable, and we think in entire harmony with the other facts shown in the case. This disposes of the contention in favor of an express agency created by the act of Stover.

The main proposition discussed in the brief of counsel for appellants is that, conceding as true that Stover did not, by any express words, constitute Eront his agent, he nevertheless must be treated as a principal on account of his acts in suffering Eront to assume the relation he did, under the circumstances stated. It is assumed that the claim of agency asserted by Eront, coupled with the further fact that he was doing business in Stover's house, with liquor licenses in Stover's name, was a sort of open proclamation or announcement, repeated by Stover from day to day, to the effect that the business conducted by Eront was his, and that as between himself and third

persons dealing with Eront,· within the scope of his *apparent* authority, Stover will be concluded or estopped to deny the fact of agency, or to avoid his liability, by showing any fact inconsistent with it. An agency may be implied or inferred from the relation of the parties, and the nature of the employment, without proof of any express appointment. It may be presumed from the repeated acts of the agent, if they were adopted and confirmed by the principal previously to the making of the contract or the doing of the act in relation to which the question is raised. *Commercial Bank of Buffalo* v. *Warren*, 15 N. Y. 577; *Sweetser* v. *French*, 2 Cush. 309; *Jones* v. *Booth*, 10 Vt. 268; *Bank of Kentucky* v. *Brooking*, 2 Litt. 41; *Gulick* v. *Grover*, 33 N. J. Law, 463; *Kountz* v. *Price*, 40 Miss. 341.

We will see what force there is in the argument in favor of estopping Stover to deny the agency of Eront. Stover never knew of Eront's claim that he was his agent. He never ratified an act of Eront's done under any claim or pretense of agency. He never engaged his services to do any work. All the parties in anywise interested in this suit lived in the same town, and were engaged in mercantile pursuits. The stores or places of business of appellants and appellee were located within two blocks of each other, and connected by telephone. The bill was not presented to Stover for payment for more than a year after it was bought. Stover, Crary & Co. and Ilfeld & Co. were both engaged in the same line of business. Estoppels are not favored. The principle invoked here is never applied, except in cases of clear and manifest necessity, in the interest of justice. There is neither a legal nor even moral necessity for the application of that rule in this case.

The simple fact that Stover, Crary & Co. were doing a grocery business, and presumably quite as well able to supply Eront with goods as the appellants, was sufficient to put them upon a more diligent inquiry touching the pretenses of Eront. If there was culpable negligence on the part of either, it was on appellants.

Counsel cite the case of *Banner Tobacco Co.* v. *Jenison*, 48 Mich. 459, S. C. 12 N. W. Rep. 655, as in point and on all fours with this. Without undertaking to restate the whole of that case, it will suffice to say that Luman and Lucius Jenison were partners as millers in the state of Michigan B. F. Emery was a merchant at Whitehall, in the same state. Emery became indebted to the Jenison firm in the sum of over a thousand dollars. Emery was in failing circumstances, and, without the knowledge of L. & L. Jenison, executed and put of record a chattel mortgage to them, covering his stock of goods. He then telegraphed L. & L. Jenison to come to Whitehall. Luman Jenison went. He and Emery entered into an arrangement by which the entire stock of goods was turned over to L. & L. Jenison; a sign placed upon the store-house to indicate proprietorship in L. & L. Jenison. Emery was appointed as agent for the firm, and left in charge, with power to sell off the goods in the usual way, and to keep the stock up by purchases, as he might think best. Luman Jenison admitted the agency thus created, but denied that Emery was authorized to buy goods on their credit. Emery testified that he did have power to buy on time, and pledge the credit of the firm of L. & L. Jenison. The agency began in 1875, and the business closed out in 1879. Emery bought a bill of cigars from the Banner Tobacco Company. The tobacco company brought suit against L. & L. Jenison to recover the price of the bill of cigars sold to them through their agent. The point chiefly discussed by COOLEY, J., in delivering the opinion, was as to the liability of Lucius Jenison, who denied having knowledge of the agency created by Luman Jenison, his partner. The proof was not very clear that Lucius Jenison had knowledge, but it was said by the judge that there was evidence to go to the jury that he did have such knowledge. It was further held that slight circumstances of knowledge or assent on the part of Lucius were sufficient, under the evidence in that case, to charge the firm. In that case

Emery had been the active managing agent of the firm, conducting their business for more than four years, and the inference is very strong that both members of the firm had actual notice of the agency of Emery, and the powers exercised under it.

In this case no agency whatever, either general or special, has been shown. The facts on which an implied agency is attempted to be raised are not sufficient, either on principle or authority, to ground this contention as a rule of law. No case has fallen under our observation pushing the doctrine of implied or presumed agency to the extent claimed here. The cases cited from the supreme court of the United States do not apply. Finding no error in the decision and judgment of the court, it is affirmed.

Long, C. J. I concur.