| 25 | 155 |
| 41 | 334 |

MATILDA C. BENTON, Respondent, v. ST. LOUIS & SAN FRANCISCO RAILWAY COMPANY, Appellant.

**St. Louis Court of Appeals, March 22, 1887.**

1. VERDICT—SPECIAL FINDINGS.—Special findings, as distinguished from special verdicts, are contemplated by the statute requiring the court, upon the request of either party, to submit special issues to the jury.

2. ———— PRACTICE.—Such special issue should be as to controlling facts, so as to enable the court, when necessary, to legally construct a verdict upon the answers thereon, and should not be put in a leading form.

3. ———— It is error to refuse to submit to the jury properly framed inquiries upon controlling facts which are not covered by any other question.

Appeal from the Laclede County Circuit Court, W. J. Wallace, Judge.

*Reversed and remanded.*

John O'Day and E. D. Kenna, for the appellant: A refusal to submit proper issues for special findings is error. *Todd v. Fenton*, 66 Ind. 28; *Harbough v. Cicott*, 33 Mich. 241; *Lambert v. McFarland*, 7 Nev. 159; *Knowlton v. Railroad*, 59 Wis. 278. "A party has the right in a jury trial, to have answers returned to specific questions, as to material facts, and a denial of this right is error." *Wyandotte v. Gibson*, 25 Kan. 236; *Bent v. Philbrick*, 16 Kan. 190; 14 Kan. 38. "When a question is submitted as to a particular fact, which is pertinent to the issue the court has no discretion," but must submit the same. *Bent v. Philbrick*, 16 Kan. 190; *Railroad v. Rice*, 10 Kan. 426.

Rombauer, J., delivered the opinion of the court.

This suit is one to recover damages for the killing of the plaintiff's cow by the defendant's locomotive, in the village of Phillipsburg, and is a common law action for negligence.

There was uncontroverted evidence showing that the cow was struck and killed by one of the defendant's locomotives attached to a freight train, within the limits of the town of Phillipsburg, and the only controverted fact was, whether or no the accident had been brought about by the negligence of the defendant's employes in charge of its locomotive or train.

One of the plaintiff's witnesses testified, that a train going at the rate of fifteen or twenty miles an hour, could be stopped at that place within one hundred and fifty yards. This was the only testimony offered by the plaintiff on that point, and was opposed by the testimony of the defendant's engineer, who stated that an ordinary

freight train, as this was, if going at the rate of between fifteen and twenty miles an hour, could not be stopped at that place in a shorter distance than half a mile, nor in a shorter distance than a quarter of a mile, if going at a rate of twelve miles an hour, as the track is down grade.

On other points the plaintiff adduced the following evidence:   One of her witnesses stated that the cow was standing twenty or forty 'feet from the track, before she started towards the track, the train being then two or three hundred feet distant.   Another stated that the cow was fifteen or twenty feet from the track when the train first came in sight, and that there was a tree about ten inches through between her and the engine.   Another that the cow was thirty or forty yards from the train when she went upon the track ; another, that she was one hundred yards from the train when she got on the track.   Thus it will be seen, that, both as to the fact within what distance a freight train as this was running, at ordinary speed, could have been stopped before reaching the place of collision, and as to the fact how far the cow was from the train when she first went upon the track, there was considerable conflict of evidence.

The defendant, thereupon, requested the court to submit to the jury the following issues for their special finding :

" (1)   Was the plaintiff's cow killed in the town of Phillipsburg ?

'' (2)   If you answer in the affirmative, then state if it was struck by an engine of the defendant ?

" (3)   Did the engineer or fireman (if the answer to the above is in the affirmative) see the plaintiff's cow before they struck it ?

" (4)   Was there not a tree between the cow and the approaching train ?

" (5)   Did not the cow start to cross the track when it, the cow, was twenty feet from the track and the

train about a quarter of a mile from the place where the animal was struck?

" (6)   Did not the cow come on the track when the train was within less than fifty yards of the place where the animal was struck?

" (7)   If you answer the above in the negative, then state what distance from the place of collision the train was when the cow went upon the track?

" (8)   How far from the place of collision was the train when the cow started toward the track?

" (9)   Before the animal started toward the track had not the cow been standing in the road or upon the common adjoining the railway?

" (10)   Within what distance could the train which struck the animal have been stopped with safety to the life and property on it, had it been signaled within the limits of Phillipsburg on the day in question?

" (11)   Could the train have been stopped in less than one hundred and fifty yards?"

The court refused to give the issues numbered three to eleven inclusive, and to such ruling the defendant at the time excepted.

The jury found a verdict for the plaintiff, and the defendant, appealing, assigns, among other errors, the action of the court in refusing to submit these special issues.

The act of 1885 provides, "The court upon the request of either party, shall direct the jury under proper instructions to find a special verdict, upon all or any of the issues submitted to them, which submissions shall be in writing distinctly specifying each issue on which the jury are to find, and such special finding shall be recorded with the verdict.   Whenever the special finding of facts is inconsistent with the general verdict, the former shall control the latter, and the court shall give judgment accordingly.   The verdict of the jury, as well as any special finding, shall be reduced to writing, and signed and returned into court by the foreman.   While

the words used in the begining of the section are "a special verdict," subsequent parts of the section show that special findings are intended, because the jury are at the same time required to bring in "a general verdict."

Similar statutes have been in force in many of the western states for some time.  Their object, unquestionably, is to enable the court, and the parties, respectively, to ascertain how the jury has found upon such independent controlling facts as are requisite to justify legally their general finding for one party or another. As the statute contemplates the submission of a number of issues, it clearly does not contemplate that each of the issues or questions, thus submitted, should, in itself, and standing alone, be conclusive of the right of either of the parties.  On the other hand, as the statute contemplates that the court may give judgment according to the special findings, regardless of the jury's general verdict, the issues thus submitted as a whole must be such that the court may legally construct a verdict upon the answers of the jury to such questions, for or against one of the parties.

Judge Brewer, in construing the law of Kansas, which is substantially the same as ours, in *Wyandotte v. Kansas* (13 Kan. 191), says : "It is useless to compel the jury to answer a question, whose answer, whatever it may be, can have no bearing on the general verdict." And the same judge, in *Bent v. Philbrick* (16 Kan. 192), says with equal emphasis, "that where a question is submitted as to a particular fact, which is pertinent to the issues, and necessarily to be determined by the jury, the court has no discretion to refuse," provided, as was added in *Wyandotte v. Gibson* (25 Kan. 236), the same issues are not already covered by other questions.

So in Indiana, under a statute similar to ours, it was held, in *Todd v. Fenton* (66 Ind. 28), that the refusal of submission of proper interrogatories to the jury for a special finding, at the request of either party, was pre-

judicial error. To the same effect are *Knowlton v. Railroad* (59 Wis. 278), and *Lambert v. McFarland* (7 Nev. 159).

In Michigan it has been held in a number of cases that inconclusive questions or issues need not be submitted, but, as in *Frankenberg v. Bank* (33 Mich. 46), the questions thus characterized are not preserved in the report, and as most of the subsequent cases rely on that case as authority for that view, the meaning of the court is not very clear. *Bonner Tobacco Co. v. Jennison*, 48 Mich. 459; *Swift v. Plessner*, 39 Mich. 178; *Harbough v. Cicott*, 33 Mich. 241.

Taking the summary of the three Kansas cases above cited, and they furnish a clear exposition of the aim and object of the law, and its proper construction, as herein above stated by us. The facts of this case call for a further observation. Questions put to the jury should not be put in a leading form, suggesting the answer expected. It has been held to be no objection to an interrogatory that it was leading, where the trial court permitted such interrogatory to be put. *Rice v. Rice*, 6 Ind. 100; *Marshall v. Blackshire*, 44 Ia. 475. So holding, and holding that it is error on the part of the court to refuse a leading interrogatory, are two different propositions. In that regard, we deem it more consonant with the aims and objects of the law and the proper administration of justice, that questions put to the jury should be governed by the rules applying to questions put to witnesses, and that it should be left to the sound discretion of the judge, to permit or refuse a leading interrogatory—merely intimating, that it is the better practice to avoid them.

Applying the law, as above stated, to the facts of the case before us, and the following results follow: The interrogatories numbered three, four, five, six, and nine and eleven are clearly leading, and while, under the cases above referred to, the court would have committed no error in submitting them to the jury, we are not

prepared to say that the court committed error in refusing them. Interrogatory number seven is incomplete, depending for its explanation on the preceding interrogatory, and could not be given, if the latter was refused, but interrogatories eight and ten submit proper issues to the jury, whose answers to them, under the evidence above detailed, might have been such as to preclude a recovery on the plaintiff's part.

The evidence of negligence on the part of the defendant's servants, even according to the plaintiff's testimony, was very slight, so that the refusal of these interrogatories was unquestionably an error prejudicial to the defendant, and as such demands a reversal of the judgment.

In view of a re-trial of the cause we make the following additional suggestions, on other points presented : The statement on which the cause was tried presents only one count, and not two, as assumed by the defendant. That part of the statement, concerning the failure of the defendant's servants to ring the bell or sound the whistle, is mere surplusage and states no cause of action. *Bell v. Railroad*, 72 Mo. 58 ; *Milburn v. Railroad*, 21 Mo. App. 432. The only question that the facts of the case present, is whether the defendant's servants could, by the exercise of reasonable diligence and care, have prevented the accident after discovering the danger of the animal.

The judgment is reversed, and the cause remanded. Lewis, P. J., concurs ; Thompson, J., dissents.

THOMPSON, J., delivered a dissenting opinion.

I agree to most of the expressions in the opinion which has been delivered by Judge Rombauer, with regard to the interpretation of the statute touching the submission of special issues to juries. I agree that the statute contemplates that interrogatories shall be submitted, calling for answers from the jury upon disputed questions of fact which arise upon the evidence.

I also agree that it is not necessary that each interrogatory should, by itself, call for an answer which is decisive of the case. On the contrary, I am of opinion that a series of interrogatories may have such a relation to each other that, although the answer to neither one of them, standing alone, will control the decision of the case, yet, at the same time, the answers to all of them, if made in favor of the one party or the other, will have that effect. I may refer to the record in this case to illustrate what I mean. If the eighth and tenth interrogatories had been well drawn, the answer to neither one, standing alone, would have controlled the general verdict; but the answers to both of them, if given for the defendant, would have required the court to overrule the general verdict for the plaintiff and enter judgment for the defendant.

But while I agree with the opinion of the majority, in so far as it narrows down the interrogatories to these two, I go further and hold that the court was not bound to give the tenth interrogatory, because it embodied an hypothesis of which there was no evidence. There was conflicting evidence in the case as to the distance within which such a train on such a grade, running at the speed at which the train was shown to have been running, could have been stopped; but there was no evidence as to the distance within which it could have been stopped, "with safety to the life and property in it." In other words, there was no evidence tending to show, that, to stop a freight train running at twenty miles an hour on a descending grade, by using all the power of steam and brakes within the command of the train men, would have wrought the slightest danger to persons and property on the train. Certainly no such conclusion arises, as matter of law, or as the result of the experience of persons not familiar with the management of railway trains; and if it be the fact that it is dangerous to persons or property on a freight train to check its speed with all the power

at command, it was incumbent on the defendant to show that fact by evidence.   The defendant had no right to demand that the court submit it to the jury for decision, in the entire absence of evidence speaking upon it.   One juror might think that the attempt to stop a freight train with all the power of steam and brakes would produce some great catastrophe, and another might think exactly the reverse ; and I confess that I do not know what the effect of such an attempt would be, though I have no experience which leads me to believe that it would have any injurious effect at all.   But it is never error, in instructing juries, to refuse to submit to them an hypothesis of fact of which there is no evidence. This is one of the most elementary principles in the law of procedure ; and the rule must apply with equal force, by parity of reasoning, to the submission to them of special interrogatories.   For this reason we ought not to put the circuit court judge in the wrong for refusing the tenth interrogatory.   Exscinding the tenth interrogatory we have only the eighth interrogatory left ; and this, standing alone, manifestly does not call for an answer which is decisive of the case.

I do not agree with the expression in the opinion of the majority, that it is within the *discretion* of the trial court to submit to a jury an interrogatory which is leading in form.   I do not agree that there is any analogy between leading questions to a witness and leading interrogatories to a jury.   The witness may be manifestly biased against the examining party, although called by him, in which case it is proper for the judge to allow him to be examined on leading questions.   But the principles which govern the submission of interrogatories to juries, under the statute, are manifestly analogous to those which govern the giving of instructions to juries.   Our law has always been extremely jealous of the giving of instructions upon hypothetical statements of fact, which are so drawn as to convey to the minds of the jury an intimation of the opinion of the

judge as to how the question of fact should be decided. On principle it is entirely immaterial whether the judge conveys such an intimation in the form of an improperly drawn instruction, of oral remarks in the presence of the jury, or by an interrogatory on a disputed question of fact, so framed as to put the answer into the mouths of the jurors. I am, therefore, clearly of opinion, notwithstanding what may have been ruled in other jurisdictions, that it would have been error for the court to give the leading interrogatories in this case ; and, hence, for stronger reasons than those stated in the opinion of the majority, I agree that the trial court committed no error in refusing them.

Upon the whole case, although evidence of negligence is meagre, I incline to think the judgment of the circuit court ought to be affirmed.