CASE 89—ACTION ON A PROMISSORY NOTE.—FEB. 20.

# Warren Deposit Bank v. Younglove.

### APPEAL FROM WARREN CIRCUIT COURT.

JUDGMENT FOR DEFENDANT AND PLAINTIFF APPEALS. REVERSED.

WITNESSES—TRANSACTION WITH PERSON SINCE DECEASED—OPINION EVIDENCE—DISCOUNTING OF NOTE—NOTICE OF DEFENCES—PARTNERSHIP—POWER TO BIND FIRM AS SURETY—NOTICE OF SURETYSHIP.

1. The opinion of a partner that a note to which his co-partner had signed the firm name was executed for money borrowed to make a payment on land purchased by the latter was incompetent, as was also his opinion that a mortgage had been given for part of the money.

2. A surviving partner was not a competent witness for himself as to the purpose for which a note was executed by the deceased partner in the firm name.

3. A bank entitled to discount a negotiable note so that it may be placed upon the footing of a foreign bill of exchange is not required to exercise care to learn whether there are equities or defenses thereto.

4. Though it may be beyond the scope of a partnership business to execute notes as surety, yet the mere fact that a partner signed the firm name to a note under his own name was not sufficient to charge a bank discounting the note with notice of the fact that the firm was surety merely, and, in the absence of any other evidence that the bank had notice of that fact, a peremptory instruction to find against the firm should have been given.

C. U. McELROY, ATTORNEY FOR APPELLANT.

This action is upon a note drawn by J. I. Younglove and J. I. Younglove & Bro. (a firm composed of J. I. and John E. Younglove) payable to the order of Robert Underwood, sixty days after date, at Warren deposit bank, and which was discounted by said bank before maturity, thereby being placed upon the footing of a foreign bill of exchange.

On this bill of exchange suit was brought against John E. Younglove the surviving member of the firm of J. I. Younglove & Bro., who made defense that the bill was signed by his partner without his knowledge or consent; that the firm name was thus signed as surety; that the proceeds of the bill were used by J. I. Younglove for his individual benefit, and that the firm got no benefit from the bill or its proceeds. These allegations were controverted by appellee who alleges that appellant knew his liability on the bill before it was discounted.

The evidence established with reasonable certainty the following facts: The firm of J. I. Younglove & Bro. was engaged in the drug business and was established more than fifty years ago; its credit was good. J. I. generally attended to the banking business of the firm. He executed the bill in suit and the signatures thereto are genuine. The bill was discounted by the bank before maturity, and in the regular course of business, for a valuable consideration *without notice* of any infirmity; the proceeds were used by J. I. and the firm derived no benefit from it, *but of this fact the bank was in entire ignorance until disclosed in this suit.* Appellee claims that the mere circumstance that the clerk of appellant, as a matter of *convenience in finding bills*, put the name of J. I. Younglove on the

back thereof was not evidence of knowledge that the firm was surety. The trial under this issue and evidence resulted in a verdict for appellee and the plaintiff has prosecuted this appeal. We claim that the court erred in its instructions to the jury, and also in admitting incompetent evidence.

In the first instruction, the jury were told substantially that they must find for the appellee if they believed that J. I. Younglove applied the proceeds of the note to his individual use without the knowledge or consent of appellee, and that appellant "could by the exercise of ordinary care have learned thereby, that the discounting of the note was for the benefit of J. I. Younglove alone."

In No. 2, they are told that if the bank by the exercise of ordinary care could have known that the firm name was signed as surety for J. I. Younglove they must find for defendant.

Instruction 3 contains the same error.

### AUTHORITIES CITED.

Story on Bills of Exchange, secs. 78; 188; Parsons on Partnership, p. 210; Leroy Bayard & Co. v. Johnson, 2 Peters, 196; Bank of Ky., v. Brooking, &c., 2 Littell, 45; Pilcher, Assignee, v. The Bank, &c., 7 Ben. Mon., 551; Burgess v. Northern Bk. of Ky., 4 Bush, 604; Woolfolk v. Bank of America, 10 Bush, 515; Sylvestein v. Atkisson, 45 Miss., 81; Montgomery v. Cit. Nat. Bank, 16 R., 445.

SIMS & GRIDER, ATTORNEYS FOR APPELLEE.

J. I. Younglove being a member of the firm of Younglove & Bro., and wanting some money for his own use executed his note for $1,000 payable to the order of his son-in-law, Robert Underwood, negotiable and payable at Warren deposit bank. J. I. first signed his own name to said note, and then signed the firm name of J. I. Younglove & Bro. as surety. This note, so signed, was discounted by said bank upon the day of its execution, December 9, 1893.    J. I. Younglove having died some time in 1894 and the bank having filed said note as a claim against his estate and failing to realize the full amount thereof, from that source, on October 24, 1900, instituted suit thereon against the appellee, John E. Younglove to recover of him the balance.

It is conceded that J. I. received all the proceeds of said note, and that the firm of Younglove & Bro. received no part thereof, and was in no way benefited by the transaction, but it is claimed by the bank that J. I. Younglove, as a partner, hav-

ing authority to sign the firm name generally, and the bank having no notice at the time, of the purpose for which the note was given or for what purpose the proceeds were to be used, that the firm was bound, and therefore, appellee as one of the firm was liable thereon.

We claim that the bill on its face shows that the bank before discounting it, should have used at least ordinary care to inquire into the circumstances under which it was executed, and if that infirmity suggests the authority to bind the makers, to use ordinary care to determine whether or not such authority existed.

The proof shows that no notice whatever was sent to the firm of J. I. Younglove & Bro. but to J. I. Younglove alone, thus showing that the bank regarded the note as the debt of J. I. Younglove. Woolfolk v. Bank of America, 10 Bush, 516; Adkins v. Blake's Admr., 2 J. J. Mar., 42; Am. & Eng. Ency. of Law, vol. 7, p. 4 (2 ed.)

OPINION OF THE COURT BY JUDGE O'REAR—REVERSING.

J. I. and J. E. Younglove were partners engaged in the sale of drugs at Bowling Green, Ky., and the firm name and style was J. I. Younglove & Bro. On December 9, 1893, a sixty-day note for $1,000 was executed, payable to Robert Underwood, and negotiable at appellant bank. It was signed: "J. I. Younglove. J. I. Younglove & Brother." This note was negotiated by and discounted to the bank before its maturity, and for value. J. I. Younglove died, and, his estate having proved insolvent, the bank brought this suit against J. E. Younglove, the other member of the firm, to recover the balance on the note. The defense was that the note sued on was not the debt of the firm; that it did not owe Underwood anything, and did not receive from him any consideration for the execution of the note; that it was executed by J. I. Younglove on account of his individual affairs, without the knowledge or consent of the other member of the firm, and that it was not on account or within the scope of the firm's business; that the name of the firm was

Warren Deposit Bank v. Younglove.

signed to the note as surety only. An issue being joined, a trial resulted in a verdict and judgment for appellee.

The following questions of evidence are presented by this appeal:    In the course of his testimony appellee J. E. Younglove said: "It is my opinion that he (meaning his brother, J. I. Younglove) borrowed the money to make a payment on some land which he bought about that time, because he made a cash payment on the land, and he had no money on hand out of which he could have made the payment." This evidence was objected to. The opinion of the witness and statements resting upon it were not relevant, nor was this witness competent to testify to the facts stated, even had they been given as matters of knowledge, instead of an opinion, and should have been excluded. The same witness further testified: "My brother agreed to pay for the land $3,950. He paid a part of this, but at the time of his death all of it had not been paid. I think a mortgage was given for a part of the money given for the land." All of the foregoing was incompetent. This witness was not competent to testify for himself as to anything done or omitted to be done by the decedent, nor was his opinion that a mortgage had been given for part of the money relevant matter in evidence.

At the close of the evidence the court instructed the jury that they should find for appellant unless they believed from the evidence that plaintiff, when accepting and discounting the note, knew that its proceeds were not to be used for the benefit of the firm, but for the individual use of J. I. Younglove, "or that the circumstances connected with the discounting of said note, if any are shown by the evidence, were such that the plaintiff could, by the exercise of ordinary care, have learned thereby that the discounting of said note was for the benefit of J. I. Younglove alone." The second

and third instructions given embodied the same idea as that quoted above. The court is of opinion that these instructions were erroneous. Those entitled to discount negotiable notes, so that they may be placed upon the footing of foreign bills of exchange, are not compelled to exercise care to learn whether there are equities or defenses thereto. If the note or bill discloses by any matter upon its face any infirmity or defense to it, of course any purchaser will be affected with notice thereof. Or, if such purchaser has actual knowledge of such facts with reference to the paper as would in law constitute notice of the defense thereto, he will be affected by it. But we are of opinion that, although it may be beyond the scope of a partnership business to execute notes as surety, yet the mere signing of such a note, the signature of the firm being last upon it, is not sufficient of itself to indicate that the last signature is that of a surety. Sylverstein v. Atkinson, 45 Miss., 81. The positions of the names signed to a note do not constitute their relation to the debt. In fact, the one signing first, and whose name may first appear, may be the surety, while the one whose name appears last may be the principal. From the necessity of the case, one name must appear first and others follow it. This is so whether the case be that of principal and surety or joint principals. Therefore the mere position of signatures to the note will not indicate that either is a surety in point of fact. The note appears to be a joint obligation. Nothing is said about either of the makers being a surety. No presumption can be indulged as to whether either is surety or both principals. Therefore, if there is nothing else in the case indicating the relation of the makers to the note at the time of its discounting by the bank, and the bank had no other notice or knowledge of the fact that the firm name was signed as surety instead of

joint principal, a peremptory instruction should have gone directing a verdict for the plaintiff. Story, Bills, sections 78, 188; Le Roy v. Johnson, 2 Pet., 196, 7 L. Ed., 391; Bank v. Brooking, 2 Litt., 45; Woolfolk v. Bank, 10 Bush, 515; Montgomery v. Bank, 16 Ky. Law Rep., 445,—seem to sustain the conclusion at which we have arrived.

The judgment is reversed, and cause remanded for a new trial not inconsistent with this opinion.

Chief Justice Guffy, dissents. Judge Paynter not sitting.

---

CASE 90—ACTION TO ENFORCE A JUDGMENT.—FEB. 20.