### HARPER v. WILSON et al.
### No. 321.

Circuit Court of Appeals, Tenth Circuit.

Jan. 2, 1931.

Floyd E. Pendell, of Ft. Morgan, Colo., for appellant.

C. R. Ellery, of Cheyenne, Wyo., for appellees.

Before LEWIS, COTTERAL, and PHILLIPS, Circuit Judges.

COTTERAL, Circuit Judge.

This suit was brought by Chester T. Harper against W. W. Wilson, his wife, Florence Wilson, and their two sons, Glen and Gilbert Wilson, to establish a trust in Harper's favor upon a half interest in the royalties payable under contracts assigning to certain named persons four separate oil and gas leasing permits upon lands in Colorado and Wyoming, to declare appellant's ownership of such interest, to direct an accounting, and to obtain a judgment for royalties sold to innocent purchasers.

This relief was sought upon an alleged joint adventure contract between Harper and W. W. Wilson. The bill alleges that in 1915, and up to the date of the Congressional Leasing Act of February 25, 1920 (41 Stat. 437), they became jointly interested in acquiring possession of the lands embraced in the permits, agreeing that each should contribute his services in the enterprise and share equally in the profits from placer locations on the lands or the development of the oil structure; that Harper furnished to Wilson geological reports and took geologists and others to the structure with a view of interesting persons in drilling the lands; that the agreement was confirmed by the letters between Harper and Wilson; that from 1915 to the time the defendants applied for the permits Harper continued to inform himself as to the best available lands to be secured under the Leasing Act, and in 1920 he mapped out for Wilson the lands best suited for the permits; that the defendants applied for and obtained permits thus indicated to them; that thereupon Wilson, acting for himself, his wife and two sons, agreed with Harper that, in exchange for his service, advice, expense, and information, beginning in 1915 and including the year 1920, the royalties and rights derived by them from the permits should be divided equally between Harper and the defendants.

It is then alleged that thereafter the defendants with such information and assistance obtained the permits; that by the combined efforts of Harper and Wilson an oil and gas well was productively drilled on the permit of Gilbert Wilson, and a well drilled on the Florence Wilson permit produced oil in commercial quantities, showing an initial gas production of more than 50,000,000 cubic feet per day; that they assigned the permits to other parties on October 29, 1924, reserving royalties on all the oil and gas produced from the lands; and that Harper rendered the services and met the conditions entitling him under the contract with the defendants to one-half of such royalties.

The defendants each answered the bill. W. W. Wilson died pending the suit, and Florence Wilson, administratrix of his estate, was substituted. In her answer as administratrix, she pleaded a want of knowledge as to the various considerations alleged and any agreement between Harper and Wilson to share the profits from the placer locations, but denied any agreement between them to share in the profits from the development of the said oil structure. The individual defendants likewise answered the bill. In a former answer, Florence Wilson alleged that the only negotiations and correspondence between Harper and Wilson of which she had knowledge pertained to the former's representation that he could interest the Midwest Oil Company or some other oil company in drilling the structure, but he failed to do so; that the development thereof was not due to any effort or service on his part; that, in furtherance of his proposal, he was to obtain an oil and gas permit to represent his interest and compensation for his services, and pool it with the defendants' permits; that he applied for the permit, but failed, after request by the United States Land Office, to pay the customary fees and furnish the required bond therefor, wherefore his application was finally rejected.

At the trial the plaintiff and other witnesses testified, and various letters of W. W. Wilson to Harper were read, over the objections of the administratrix. At the conclusion of the plaintiff's testimony, the defendants moved for a dismissal, their motion was sustained, and a decree was entered for the defendants.

The trial judge decided that in the case of the three individual defendants evidence was wholly wanting to show that they ever had knowledge of any joint adventure between Harper and W. W. Wilson, or that he as their agent entered into it; that the plaintiff was an incompetent witness against the

administratrix, and his testimony could not be considered; that Harper's reliance was upon the letters of W. W. Wilson; and that they failed to establish the alleged contract. Appellant complains of these rulings.

 The agreements were in evidence whereby the Wilsons were to receive upon the assignment of their permits 6 per cent. and 2 per cent., respectively, in the primary and secondary areas. Appellant testified to his qualifications and experience and his service in interesting various parties and companies named, including the Midwest Refining Company, in examining their lands. He testified further that he received the letters of W. W. Wilson by mail; that the permits were located on the Hiawatha structure; that a well was brought in upon the Florence Wilson permit, and, after the suit was commenced, another well was brought in on the W. W. Wilson permit; that from 1915 until October 29, 1924, he spent in excess of $1,000 in cash and $4,000 in time; that the operating companies were the Texas Production Company and the Mountain Fuel & Supply Company; that he took up with the Midwest Refining Company the question of the extension of the Wilson permits, and through Mr. Aitken made complete arrangements for the use of the legal department of that company for the extension. He did not offer to testify to the alleged joint adventure contract.

The other witnesses at the trial were Glen Wilson, Andrew D. Aitken, vice president of the Midwest Oil Company, and H. L. Kuykendall, a geologist. Glen Wilson testified to the handwriting of W. W. Wilson on all but one of the letters. It suffices to say as to the testimony of the other two witnesses that, while it related to various efforts of Harper to interest them and others in this structure, it does not purport to show the alleged joint adventure between Harper and Wilson in the lands embraced in the permits that were obtained, but instead contracts between Wilson and others to share in the royalties from them.

We agree with the trial court that there is no evidence that W. W. Wilson was the agent of his wife and two sons, or that they had knowledge of the alleged contract. There was no proof against them. The letters of Harper were as to them mere admissions of their alleged agent, but by familiar rule agency may not be thus shown. It is very clear that the dismissal of the bill as against the wife and sons was fully justified.

 As between Harper and the administratrix, there is no sound reason why the letters except in the one instance were not properly admitted for what they were worth as mere writings executed by Wilson. This is because the signatures of W. W. Wilson were identified by a competent witness. It is contended the letters are inadmissible transactions between the parties. The Wyoming law controls as to the competency of witnesses. Section 631, title 28, U. S. Code (28 USCA § 631). Section 5807, Wyo. Comp. Stat. 1920, provides that a party shall not testify where the adverse party is an executor or administrator, etc., with certain exceptions here inapplicable. Harper was therefore incompetent to testify against the administratrix concerning the letters, or to any fact tending to establish the alleged contract, because the statute disqualified him as a witness. Bliler v. Boswell, 9 Wyo. 57, 59 P. 798, 61 P. 867; Ullman v. Abbott, 10 Wyo. 97, 67 P. 467; Hecht v. Shaffer, 15 Wyo. 34, 85 P. 1056; 40 Cyc. 2320. But it did not exclude the letters as evidence if otherwise identified.

The letters bear dates extending from November 8, 1916, to July 12, 1924. They show that Harper was advising and assisting Wilson in obtaining the placer locations and the leasing permits, and they contain offers to divide the avails, but there was no competent testimony that Wilson mailed them or that Harper received them.

We refer to certain of the letters, selected by counsel for appellant. In the letter of January 11, 1920, Wilson advised that he had prospects for and acquired a number of specified sections in connection with other parties, and added in a postscript: "We will go fifty-fifty in the deal. You do your part and I will do my part." In the letter of May 23, 1921, it was said Harper had by his letters given Wilson new hope "the day will come when we will visit Vermillion Dome together to see one of the greatest oil gushers that the United States has ever seen. And I wish to say right here, Mr. Harper, we will go fifty-fifty upon this when it does come true." And in the letter of February 27, 1924, Wilson wrote: "Do not do anything till you see me for I wish to do the right thing with you. Just as I have always done. I will explain this to you when I see you which will be soon. Your interest will be taken care of just as it should be but we must get together on this in the proper way."

There was no competent testimony that Wilson mailed or parted with the letters. No letters from Harper were introduced. The letters of Wilson, standing alone, fell short

of establishing a joint adventure, whereby Harper was to share in the royalties from the lands on which the permits here involved were issued. And the whole of the evidence was insufficient for that purpose. The bill was properly dismissed as to the administratrix.

The decree of the trial court is accordingly affirmed.