**A. R. KESSLER, Olive Kessler, Stanley Y. Kessler, Raymond L. Kessler, Daniel F. Kessler and Alda Kessler Stewart, Appellants (Plaintiffs below),**

**v.**

**Charles W. KESSLER, Roberta Kessler Mc-Gowen, and Jordan David Kessler, a Minor, Appellees (Defendants below).**

**No. 3089.**

Supreme Court of Wyoming.

April 16, 1963.

David N. Hitchcock, Laramie, for appellants.

Joseph F. Maier, Torrington, for appellees.

Before PARKER, C. J., and HARNSBERGER, GRAY, and McINTYRE, JJ.

Mr. Justice HARNSBERGER delivered the opinion of the court.

A. R. and Olive Kessler joined by four of their children sued their son Charles and the widow and minor child of John, deceased, another son. Plaintiffs based their action upon an alleged oral agreement which the parents claimed they had made with John and Charles as partners. Charles admitted the agreement but prayed judgment be given plaintiffs solely against the widow and minor. The widow and minor denied there was any such agreement. Trial being to the court without jury, it found plaintiffs' evidence insufficient to prove there was an agreement and dismissed the action against the widow and minor.

From this judgment plaintiffs appeal claiming the court erred in excluding testimonies of plaintiffs A. R. Kessler, by deposition, and Daniel Kessler, and of defendant Charles, who were the only witnesses offered in behalf of plaintiffs with the ex-

ception of the wife of defendant Charles, who disclaimed any knowledge other than hearsay relative to the supposed agreement, and of Roberta who denied there was any such agreement as that asserted by plaintiffs or that she had any knowledge concerning it.

Although appellants attempt to bolster their appeal with argument that the subject matter of the agreement was partnership property of Charles and John; that Roberta was a substituted partner for John; and that the parents had transferred the subject property to Charles and John in reliance upon certain promises they made, the entire core of the appeal rests upon whether plaintiffs proved by substantial evidence there was in fact the claimed agreement. In turn, whether there was any substantial evidence which constituted the necessary proof depended entirely upon the competency as witnesses of A. R. Kessler, Daniel Kessler, and Charles Kessler in the face of objection under § 1–140, W.S.1957, which the court sustained. This leaves the only issue raised by plaintiffs' appeal to be the competency of the three-named Kesslers.

The pertinent portions of § 1–140, supra, are as follows:

"A party shall not testify where the adverse party is the guardian or trustee of either a deaf and dumb or an insane person, or of a child of a deceased person, or is an executor or administrator, or claims or defends as heir, grantee, assignee, devisee or legatee of a deceased person, except:

\*    \*    \*    \*    \*    \*

"5. In an action or proceeding by or against a partner or · joint contractor, the adverse party shall not testify to transactions with, or admissions by, a partner or joint contractor since deceased, unless the same were made in the presence of the surviving partner or joint contractor; and this rule shall be applied without regard to the character in which the parties sue or are sued:

\*    \*    \*.    \*    \*    \*

"Nothing in this section contained shall apply to actions for causing death, or actions or proceedings involving the validity of a deed, will or codicil; and when a case is plainly within the reason and spirit of the last three sections, and though not within the strict letter, their principles shall be applied."

A casual reading of paragraph 5 above, would seem to sanction the admission of the testimonies of the two plaintiffs which were excluded because those testimonies purported to concern transactions with John, had in the presence of Charles, his partner. But if the rule of incompetency is to be applied with reason, in the spirit of the statute, and in accord with the principle that the living should not be permitted to take unfair advantage of either the dead or those taking through such deceased, then the applicability of paragraph 5 depends upon whether the interest and position of the surviving partner are in harmony with the interest and position taken by the widow and minor. The reason for paragraph 5 is the assumption that the voice of the dead partner will be given opportunity to be heard through the lips of the surviving partner. When a surviving partner assumes to speak against and not for the dead, the reason for the exception fails and, hence, such evidence remains inadmissible.

For exactly the same reason Charles himself was an incompetent witness. Although he elected to confess his assent to the agreement contended for by plaintiffs, and thereby admitted his own obligation to plaintiffs, he nevertheless asked that judgment not be rendered against him but that plaintiffs have judgment on their claim solely against the widow and minor. The trial court was correct in ruling Charles was an adverse party to the widow and child, and to hold him incompetent to testify despite the fact he was named as their co-defendant and had been a partner of John. A contrary ruling would be antagonistic to the reason and spirit of the law and would contravene the very principle upon which it was predicated.

The legislature of this State wisely required that, notwithstanding a case is not within the strict letter of the law, when it is plainly within its reason and spirit, its principles shall be applied. If either or all of the plaintiffs, or Charles, had been permitted to testify concerning the alleged agreement, the widow and child would have been left defenseless because the only person who could have disputed such adverse testimony and who could have supported the position taken by them was unable to speak.

Furthermore, the opinion in State Bank of Wheatland v. Bagley Bros., 44 Wyo. 244, 11 P.2d 572, commits this court and requires exclusion of Charles' testimony. At 11 P.2d 587, after noting the surviving partner and co-defendant had admitted all claims made by plaintiff, the court said, "Undoubtedly, his interest really lay with the plaintiff's side of the issues as made up and against that of the other defendants."

The parallel here is that Charles' answer also admitted plaintiffs' claims. Therefore Charles' interest likewise lay with plaintiffs in this case. This made him a witness adverse to the widow and her son who denied the agreement.

■ In the Bagley case it was insisted no preliminary examination of the surviving partner was had to show he was an adverse party. The court said none was needed and that the record as already made by pleadings established that fact. Similarly, by answer of the surviving partner, Charles, it was established he was an adverse party to the widow and minor. In line with the Bagley decision it is concluded that, although the surviving partner Charles was a co-defendant with the widow and her son, that fact cannot and does not control the question of whether he was an adverse party to them. It is impressive that the Bagley opinion indicates unequivocally that in the view generally taken by courts relative to statutes such as ours, it is a well recognized rule that the real interest of the parties, rather than their position as plaintiff or defendant, controls the question of whether parties are opposite within the

meaning of incompetency statutes and that their status depends upon the relation they sustain to each other regarding the particular issue in controversy. We, therefore, hold that Charles was an adverse party to Roberta and the minor child and as such was incompetent to testify.

■■ In kind, appellant tried to have both Charles and Daniel lay foundation for admission of an exhibit consisting of a copy of a memorandum of the disputed agreement purportedly prepared by Charles, but the court also sustained objection to that testimony. The correctness of this ruling is sanctioned by what this court said in Stephens v. Short, 41 Wyo. 324, 285 P. 797, 798–799, where it was pointed out that the word "transaction" as used in § 5807, W.C. S.1920, now § 1–140, W.S.1957, is a very broad term and has been held to embrace:

> "* * * 'every variety of affairs which can form the subject of negotiations, interviews, or actions between two persons, and includes every method by which one person can derive impressions or information from the conduct, condition, or language of another.' * * * *"

Therefore, any testimony by either Charles or Daniel concerning the memorandum, was clearly within the prohibition of the statute.

Stephens v. Short, 285 P. at 801 and 803, also sets up guideposts for application of § 1–140, W.S.1957, to the very circumstance with which we now deal, saying:

> "* * * When the policy and spirit of the law are regarded, we are unable to perceive that the fact that the contract was in form several, as well as joint, injected any other element into the situation which should properly lead to a different conclusion."

> "In the light of these authorities, and with the emphatic and positive command of the concluding words of section 5807, supra, before us, [§ 1–140, W.S.1957] 'and when a case is plainly within the reason and spirit of the last

three sections, though not within the strict letter, their principles shall be applied,' we are constrained to conclude in the case before us that plaintiff's testimony concerning the accident was wholly inadmissible against either defendant, and that there was error in the trial court's ruling to the contrary. * * *"

While this last statement was made with reference to the exclusion of a plaintiff's testimony, it is equally applicable to testimony from Charles whose position in the lawsuit unquestionably made him a party adverse to the position of Roberta and her son.

■ The plain and unmistakable purpose of § 1–140, supra, is to exclude all adverse testimony which a party to an action might for any reason be tempted to give in an effort to defeat the position of those whose entitlement is received from or through the dead, insofar as such testimony affects transactions with the deceased during his lifetime and about which he can no longer speak.

The opinion in Stephens did not deviate from holdings of courts from other jurisdictions, however, there is such variety in the wording of statutes of different jurisdictions making incompetent as witnesses adverse parties in actions against those who defend as heirs of a deceased, that it profits little to cite decisions based upon their own laws except as their holdings may reflect the basic principles and reasonings which prompted conclusions. Collectively, however, their single common purpose is to deny the living the right to testify adversely to the interests of those who take from or through a deceased as to matters which the deceased, if living, could challenge and dispute. A few of the cases may serve to illustrate that purpose while reference to the trend of such holdings in several states may be further illustrative.

In the early case of Moore v. Schofield, 96 Cal. 486, 31 P. 532, a suit founded upon an alleged joint obligation of two defendants, one defendant died and his administrator was substituted. The surviving partner defaulted. The administrator denied the agreement. Plaintiff offered to prove the contract by the survivor. Objection was sustained. Affirming the judgment, the court pointed out that if the testimony tended to establish the claim against the estate no reason could be given for supposing the statute was not intended to include it, and, at page 533, said:

"* * * If it be conceded that the court can look beyond the letter of the statute, and determine whether a given case is within the reason of the rule, it does not appear in this case that Chapman [the surviving partner] had no interest in establishing the claim against the estate. His own default had been entered, upon which judgment subsequently passed against him. He had an interest in having judgment rendered, thereby compelling the estate to contribute to the satisfaction of the claim. * * *"

In Cooper v. Wood, 1 Colo.App. 101, 27 P. 884, 886, it was said, "not only was the partnership dissolved, but the party to be charged was dead; ' * * * it is very clear that no acknowledgment by the surviving partners after the death of one of them will revive the debt against the estate of the deceased partner.'"

Gavin v. Bischoff, 80 Iowa 605, 45 N.W. 306, 307, discussing the application of a law somewhat similar to Wyoming's, said:

"* * * it prevents living witnesses from establishing contracts, by their own evidence, as to personal transactions and communications with parties whose lips are sealed by death, in actions to which such witness and the representatives, privies, and survivors of the deceased are parties. * * *"

In Annotation 22 A.L.R.2d 1092, § 14, there is listed and annotated decisions from fourteen states including Wyoming which prompt the statement that:

"As a general rule the survivor of one or more joint contractors or partners

is held incompetent under the pertinent dead man's statute to testify as to conversations or transactions with the decedent in favor of the adverse party and against the interest of decedent's estate."

Indiana, in Taylor v. Duesterberg, 109 Ind. 165, 9 N.E. 907, 910, gave recognition that:

"* * * Where the contract or matter involved in the suit or proceeding is such that one of the parties to the contract or transaction is, by death, denied the privilege of testifying in relation to such matter, the policy of the statute is to close the lips of the other also in respect to such matter. * * *"

Unbrokenly this rule has been followed through Citizens' State Bank of Kingman v. Fountain Trust Co. of Covington, 95 Ind. App. 2, 179 N.E. 190, the last decision of Indiana on the subject which has been found.

Illinois in Hurlbut v. Meeker, 104 Ill. 541, noting as precedent Langley v. Dodsworth, 81 Ill. 86, upheld the exclusion of such testimony upon the same principle and continued to so hold through Fredrich v. Wolf, 383 Ill. 638, 50 N.E.2d 755, the last case found on the subject in that state.

New York's 1882 case, Hunter v. Herrick, 26 Hun 272, affirmed 92 N.Y. 626, denied a surviving firm member the right to give testimony showing deceased was a member of the firm. Dolan v. Leary, 69 App.Div. 459, 74 N.Y.S. 981 affirming, conformed to the rule and no case has been found to the contrary.

Arkansas, in Bush v. Prescott & N. W. Ry. Co. (1907), 83 Ark. 210, 103 S.W. 176, rehearing 103 S.W. 178, permitted such testimony but expressly restricted it to apply only insofar as it might affect a co-defendant.

Nevada, in Gage v. Phillips (1891), 21 Nev. 150, 26 P. 60, a case somewhat similar to the instant matter, excluded the testimony of the surviving partner.

Washington, in Bay View Brewing Co. v. Grubb, 31 Wash. 34, 71 P. 553, held the opposite party was incompetent as a witness.

North Carolina, in Lyon v. Pender (1896), 118 N.C. 147, 24 S.E. 744, another case with somewhat similar circumstances to the present matter, also excluded the surviving partner from giving testimony, and this precedent was adhered to through Wilder v. Medlin (1939), 215 N.C. 542, 2 S.E.2d 549, the last North Carolina case found on the subject.

North Dakota, in First Nat. Bank of Bottineau v. Warner, 17 N.D. 76, 114 N.W. 1085, even excluded a building contractor from testifying in an action where the bank sought foreclosure of its·lien for building materials, because the court deemed the contractor an opposite party to the executors and heirs of the deceased owner of the building.

In Ohio, in Snow v. Fulton, 51 Ohio App. 514, 2 N.E.2d 12, 14, although the excluded witnesses were not parties to the action against the estate, the court reasoned that the suit if successful would place the burden upon the estate of paying a claim, two-thirds of which the witnesses were obligated to pay, and concluded it was "a case 'plainly within the reason and spirit' of said disqualifying statute, though not within the strict letter thereof, and that the principles of the statute should 'be applied.'" These principles continued to be upheld through the last Ohio case found, Pfister v. Walter, 83 Ohio App. 156, 82 N.E.2d 768.

Pennsylvania, in Hogeboom v. Gibbs, Sterrett & Co. (1878), 88 Pa. 235, 237 (7 Norris), excluding the testimony of the surviving partner of a deceased, put the matter rather well, saying:

"* * * He might not have been incompetent for all purposes upon the mere ground of his being a partner. He was called, however, for the purpose of showing the partnership. The effect of his evidence, if received, would be to shift a portion of his re-

sponsibility upon some one else. He was thus directly interested, and for that reason incompetent * * *."

In Texas, Rascoe v. Walker-Smith Co., 98 Tex. 565, 86 S.W. 728, testimony of a survivor to prove a partnership with the deceased was excluded, in an action against witness and decedent's executrix, where witness defaulted and executrix denied the partnership. Later in 1961, in Gonzales v. Meek, Tex.Civ.App., 350 S.W.2d 580, where witness, although joined as co-defendant with guardian of minor, was admittedly and in fact adverse to minor, the court said it was well settled that in applying the rule of the statute, courts will consider the nature of the suit and the relative interest of the party whose testimony is offered rather than the position he may occupy in the record.

Iowa, in Giesecke Boot & Shoe Manuf'g Co. v. Seevers (1892), 85 Iowa 685, 52 N.W. 555, rejected deposition of witness claiming to be a surviving partner of deceased which was offered to prove partnership. Nugent v. Dittel (1931), 213 Iowa 671, 239 N.W. 559, continued to enforce the incompetency rule.

In Kentucky, Warren Deposit Bank v. Younglove, 112 Ky. 767, 66 S.W. 749, the majority opinion said the surviving partner, a brother of deceased, was not competent to testify.

The Federal Circuit Court on appeal from the District Court of the United States for the District of Wyoming, in Harper v. Wilson, 10 Cir., 46 F.2d 785, an action against the administratrix of a deceased, held a decedent's letters to plaintiff, if identified were admissible, but plaintiff was incompetent to testify concerning them or to any fact tending to establish the contract relied upon.

An interesting opinion of the Federal Court for the Eastern Division of Michigan, in Mutual Ben. Life Ins. Co. of New Jersey v. Smith, D.C.Mich., 8 F.2d 365, decided that even the testimony of a litigant's attorney, who himself was not a party, was excluded under the Michigan statute which rendered incompetent an agent who acted in making or continuing a contract with a person since deceased.

However, in Missouri, Stephenson v. Stephenson, 351 Mo. 8, 171 S.W.2d 565, held the identification of deceased's handwriting was not barred by the statute.

California, in Moore v. Schofield, 96 Cal. 486, 31 P. 532, followed the general rule and continued to do so until Trabin v. Title Insurance & Trust Company, 52 Cal.2d 149, 339 P.2d 136. The court there says flatly that Moore v. Schofield, supra, and Blood v. Fairbanks, 50 Cal. 420, were overruled, and Roncelli v. Fugazi, 44 Cal.App. 249, 186 P. 373, was disapproved insofar as it was inconsistent with the views expressed in the opinion. We must accept Trabin as the law of California, but, for several reasons, its ruling does not overcome or override the large majority of contrary decisions from other jurisdictions.

In Trabin, plaintiff sought to examine as an adverse party the widow of the deceased, for whom the executor had been substituted, in an action brought during deceased's lifetime against both him and his wife. Before the husband died, he and his wife admitted the agreement relied upon by plaintiff. The executor objected claiming the widow was disqualified as a witness by the California statute which barred as witnesses, 339 P.2d 137 n. 3:

"Parties or assignors of parties to an action or proceeding, or persons in whose behalf an action or proceeding is prosecuted, against an executor or administrator upon a claim, or demand against the estate of a deceased person, as to any matter or fact occurring before the death of such deceased person."

The court permitted the witness to testify saying, 339 P.2d 138:

"* * * She was joined as a defendant on the theory that she and Mr. Kauffman were joint obligors, and her testimony tended to establish her

own responsibility, as well as that of the estate. In these circumstances the *possibility* that plaintiff might seek satisfaction from the estate rather than from Mrs. Kauffman could not have furnished a motive for falsehood. She could have served her own interests best by denying the validity of the claim, and the fact that she nevertheless testified in support of plaintiff was a strong indication that she was telling the truth. * * *" (Emphasis supplied.)

The differences between this California case and the one here are material. In Trabin both deceased and his co-defendant widow admitted the pertinent agreement. Here, the deceased had not been sued and Roberta and the minor denied the agreement. In Trabin the court *assumed only the possibility* that plaintiff might seek satisfaction from the co-defendant executor. Here plaintiffs and co-defendant Charles insisted upon satisfaction from the widow

and minor. Furthermore, Charles affirmatively asked that he be held *not* liable but that plaintiff have judgment solely against his co-defendants, the widow and her son. In consequence, the very motive which the California case found was absent to invite falsehood in Trabin, and by reason of which its conclusions were reached, is actually present here.

When an action against heirs is based upon the deceased's alleged oral agreement, all parties to the action whose interests thereunder are adverse to the heirs are incompetent to testify, over objection of the heirs, concerning any matter relating to the purported agreement.

Finding there was no error in the court's excluding the deposition testimony of A. R. Kessler and the testimonies of Charles and Daniel results in there being no evidence at all to prove the agreement upon which rested plaintiffs' claim. The judgment of the trial court is therefore affirmed.

Affirmed.