## No. 20667.

ESTHER SUSSMAN *v.* DOROTHY BARASH, EXECUTRIX OF THE
ESTATE OF SOLOMON BARASH, DECEASED.
(401 P.2d 608)

Decided May 3, 1965.

LAWRENCE LITVAK, MARTIN ZEROBNICK, for plaintiff in
error.

ALEX STEPHEN KELLER, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE MCWILLIAMS.

THIS writ of error involves the statute commonly referred to as the Dead Man's Statute (C.R.S. '53, 153-1-2), and its application, if any, to the controversy engendered by the Barash family.

Solomon Barash died testate, leaving his estate to his surviving widow and four children. Thereafter Esther Barash Sussman, Solomon's sister, filed a claim for $3000 against her deceased brother's estate, the basis of her claim being the "promise of the deceased to give claimant this amount to apply to purchase of a home." Upon hearing, this claim was allowed and judgment was duly entered in favor of Esther against the estate in the sum of $3000. This matter was then appealed from the County Court to the District Court by the executrix for the estate, where trial de novo ensued.

Upon trial in the District Court the claimant called as her first witness Max Barash, a brother of both the claimant and the deceased. Counsel for the estate objected to the examination of this witness as to any conversation between the witness and the decedent, on the ground that the witness under the Dead Man's Statute was incompetent to so testify because he was directly interested in the outcome of the proceeding. Thereupon, counsel for the claimant made an offer of proof, the gist of which was that Max Barash, if permitted, would testify that he and the decedent, along with another brother, Jack Barash, and their father, Abraham, entered into an oral contract whereby each, in consideration of the promises of the others, agreed to give to Esther certain sums of money, namely: Max agreed to give Esther $1000; Jack agreed to give Esther $1000; the father agreed to give Esther $2000; and the decedent agreed to give Esther

$3000. This offer of proof was rejected by the trial court, which then sustained the objection interposed by the estate to the witness Max Barash, on the ground that under the Dead Man's Statute Max Barash was not competent to so testify. There was then a further offer of proof to the effect that Jack Barash and the father, Abraham Barash, would also testify, if permitted, "along the same lines as . . . the witness Max Barash." This further offer of proof was also rejected on the ground that such was in like fashion prohibited by the Dead Man's Statute. The claimant, having no other testimony, then rested her case. On motion the trial court dismissed the claim and entered a judgment to that effect. By writ of error the claimant now seeks reversal of the judgment dismissing her claim against the estate.

C.R.S. '53, 153-1-2 provides, in part, as follows:

"No party to any civil action, suit or proceeding, *or person directly interested in the event thereof,* shall be allowed to testify, of his own motion, or in his own behalf, by virtue of section 153-1-1, when any adverse party sues or defends as . . . the executor or administrator . . . of any deceased person . . ." (Emphasis supplied.)

C.R.S. '53, 153-1-1, referred to in the statute above quoted, declares that "all persons, without exception, other than those specified in sections 153-1-2 to 153-1-8 may be witnesses" and that "neither parties nor other persons who have an interest in the event of an action or proceeding shall be excluded."

It is agreed that neither Max Barash, his brother Jack, nor his father Abraham, is a "party" to this proceeding wherein the claimant, Esther, has filed claim against the estate of her deceased brother Solomon. Hence, the rather narrow issue here to be determined is whether Max, Jack and Abraham are precluded from testifying because of the statutory proviso prohibiting a "person directly interested in the event thereof" from testifying "of his own motion, or in his own behalf."

In this regard it is claimant's contention that neither Max, Jack nor Abraham is *directly* interested in the outcome of this controversy, nor is any one of these three testifying either "of his own motion" or "in his own behalf." It is pointed out that actually Max, Jack and Abraham, if permitted to testify along the lines indicated in the offer of proof, will be testifying *against* their personal interest and to their own financial detriment, in that if it be determined that there is a valid contract between the several parties, then these three are themselves obligated to pay claimant the sums of $1000, $1000 and $2000 respectively.

Our attention has not been directed to any decision of this Court which bears directly on the matter of whether the Dead Man's Statute is applicable to the testimony of a surviving party who entered into a contract with a decedent for the benefit of a third person, where the third person later filed a claim against the decedent's estate. Prior decisions of this Court, however, do shed some light on this question as to the general nature of the "interest" which would disqualify one from testifying where the adverse party sues or defends as the executor of a deceased person.

In *Norris v. Bradshaw,* 92 Colo. 34, 18 P.2d 467, appears the following:

"The fact that she is the wife of the defendant would not, of itself, make her directly interested in the event of the suit, within the meaning of the statute, so as to exclude her testimony. . . . To exclude the testimony of a witness on the ground of interest, his interest must be such that he will either gain or lose by the direct legal operation and effect of the judgment of the court disposing of the facts in issue."

In *Estate of Thomas v. Davis,* 144 Colo. 358, 356 P.2d 963, where it was contended that certain witnesses were disqualified by the Dead Man's Statute from testifying at the request of the caveatrix as to a lack of testamentary capacity on the part of the testator be-

cause under the terms of the will the witnesses had been named as beneficiaries, it was said:

"The record discloses that Mrs. Hays and Mr. Richardson were called as witnesses by the adverse party and were testifying against their own interests. *They had nothing to gain and everything to lose by their testimony.* In such circumstances the 'Dead Man's Statute' is not a bar." (Emphasis supplied.)

In 58 Am. Jur. 184 the general rule on this particular subject is set forth as follows:

"Under the statutes generally one entering into a contract for the benefit of a third person may testify as to it in an action by the latter, the beneficiary, against the estate of the other party or persons claiming under him. This is true under a statute disqualifying the surviving party to the contract or cause of action from testifying in his own favor or in favor of any party claiming under him, and disqualifying the agent or attorney of such surviving party, under a statute prohibiting a person from testifying for himself as to a transaction with a decedent, and also, according to some authorities, under a statute disqualifying a person from, through, and under whom a party or interested person derives his interest or title by assignment or otherwise."

In 149 A.L.R. 1130 there appears an annotation concerning the applicability of the Dead Man's Statute to the testimony of a surviving party who entered into a contract with a decedent for the benefit of a third person, and the conclusion reached therein is that although there are cases to the contrary, the weight of authority holds that:

". . . [O]ne entering into a contract for the benefit of a third person is not an incompetent witness (at least if he is not a real party in interest in the action) to testify in respect thereto in the beneficiary's action against the estate, personal representatives, heirs, or other persons claiming under or through the deceased party to the contract, either on the theory that such person has no self-

interest in the event or outcome of the litigation, or on the theory that he is not 'a person from, under, or through whom' the beneficiary (a party to the action) claims his title or interest in the action, the view being frequently taken that in such cases the beneficiary does not claim from, under or through such witness, but from the estate of the deceased party to the contract."

■ Applying the foregoing principles to the case at hand, we arrive at the definite conclusion that Max, Jack and Abraham Barash are not directly interested in the outcome of Esther's claim against the estate of her deceased brother and that none of these three, if permitted to testify along the lines outlined in the offer of proof, would be testifying "in his own behalf." Hence the trial court erred in holding that the Dead Man's Statute precluded the reception of the testimony of Max, Jack and Abraham Barash. Whether the alleged contract can ever be established by the claimant is no part of the present controversy. All that this Court is now determining is that the Dead Man's Statute is inapplicable to the factual situation disclosed in the record now before us.

Counsel for the estate relies heavily upon *Asbury v. Hicklin,* (Mo. 1904), 81 SW 390, where it indeed was held that the surviving party to a contract with a decedent for the benefit of a third person was precluded by the Dead Man's Statute from testifying in a proceeding brought by the third person against the estate of the deceased. In this regard we would point out that the rule announced in the *Asbury* case is apparently no longer followed even in Missouri. See *Darnell v. Darnell,* (Mo. 1943) 174 SW2d 812 and *Fisher v. Cox,* (Mo. 1958) 312 SW2d 775.

The judgment is reversed and the cause is remanded for further proceedings consonant with the views herein expressed.

Mr. Justice Sutton and Mr. Justice Frantz concur.