Nicke N. NICHOLS, Executrix of the Estate of Nick A. Nichols, Deceased, Appellant (Defendant below),

v.

Tsetsy PANGAROVA, Appellee (Plaintiff below).

No. 3673.

Supreme Court of Wyoming.

July 22, 1968.
Rehearing Denied Aug. 27, 1968.

Harry E. Leimback, of Leimback & Hand, Casper, for appellant.

Ernest Wilkerson, Casper, for appellee.

Before HARNSBERGER, C. J., and GRAY, McINTYRE, and PARKER, JJ.

Mr. Justice PARKER delivered the opinion of the court.

Since this case is before us a second time, a summary of the previous litigation would be salutary. Tsetsy Pangarova, a niece of Nick A. Nichols, deceased, after having unsuccessfully challenged decedent's will in which she was not named as a beneficiary, brought an action in 1963 against the executrix of decedent's estate for dam-

ages growing out of breach of a contract that decedent would adopt her and make her his heir. In the trial of that case the court at the conclusion of plaintiff's evidence sustained defendant's motion for a directed verdict. A judgment thereon was reversed and the case remanded by this court for new trial, basically on the ground that there had been presented a question of fact for the jury as to whether or not plaintiff had by way of her conduct and performance accepted decedent's offer. Pangarova v. Nichols, Wyo., 419 P.2d 688. In the resulting district court trial before a second judge, the case was submitted to the jury, which returned a verdict in plaintiff's favor for $35,000. The executrix has appealed from this verdict and judgment, charging a number of errors:

Plaintiff failed to prove creditor's claim;

The court erred in admitting testimony of Maren Pangarov, plaintiff's father, and in admitting testimony of William Swanton, an attorney who had prepared a prior will of deceased;

Plaintiff did not prove damages;

Plaintiff failed to establish a contract (on which result the effects of decedent's subsequent marriage and his not adopting plaintiff had a bearing);

The completion of the contract was impossible;

The court should have directed a verdict for defendant;

The court erred in the giving of certain instructions and in failing to give others.

The previous opinion adequately recited the basic facts germane to the controversy, but for convenience of the reader, these are here repeated:

" * * * the record discloses that the decedent came to this country from Bulgaria in the year 1913. He left behind a brother * * *. Plaintiff is the youngest child of the brother and his wife. The decedent settled in Casper, Wyoming, became a naturalized citizen, and in the year 1929 married his first wife, Marie. The couple had no children. Over the

years decedent prospered and at the time of his death left an estate valued at approximately $162,000. Sometime prior to the year 1947 the decedent and his wife Marie became interested in bringing plaintiff to America and * * * there was mutual correspondence between the decedent, the plaintiff, and decedent's brother * * * toward that end. Understandably, Bulgaria being a Communist country, difficulty was encountered in arranging for plaintiff to come * * * and there was a delay of several years. In the meantime decedent's first wife, Marie, died in February 1955. In June 1956 decedent, who was then 69 years of age, married the defendant, who was then 35 years of age. Eventually the obstacles preventing plaintiff from coming to the United States were overcome and she arrived here in January 1957. She was met by the decedent and the defendant at the airport in Casper and taken to their home. She remained there for a period of approximately one month when, because of conditions existing in the home * * * she left * * * and took up residence in an apartment secured for her by the decedent. She remained there for approximately one and a half years, at the end of which time she moved for residence to Denver, Colorado, and did not again see the decedent. The decedent died testate in the year 1962, and by will all of his property was left to the defendant. The within action was commenced on March 20, 1963." Pangarova v. Nichols, supra, 419 P.2d at 690.

Following our opinion in the first case and the return of the record with the mandate to the district court, a pretrial conference was held, the report of which was quite lengthy, addressed to several matters, among which the following are significant in this appeal:

Defendant's motion to amend her answer by adding nonperformance as a defense was granted, but her motion to add the affirmative defense of failure of consideration was denied.

Plaintiff conceded that "the widow, Nicke Nichols, in any event is entitled to take one-half of the net value of the estate," and the court was of the opinion at that time that it would be proper to advise the jury by an instruction of that concession. No objection would be raised by the defendant to the authenticity of matters in the probate case of Nichols although the right to objection as to materiality and relevancy was reserved.

The court was undecided as to whether or not plaintiff might introduce evidence of the value of the estate of the decedent.

The pretrial conference memorandum of plaintiff submitted on the day of the pretrial was incorporated and made a part of the report, the first sentence of that report stating, "This action, filed March 20, 1963, is based on a claim against the estate of Nick A. Nichols, filed by plaintiff January 28, 1963, and rejected by defendant March 15, 1963."

## PROOF OF CREDITOR'S CLAIM

■ Defendant argues here that plaintiff brought this case as a creditor of the estate but failed to prove the essential presentation of creditor's claim. Her argument is based largely on Delfelder v. Farmers' State Bank of Riverton, 38 Wyo. 481, 269 P. 418, 270 P. 1081, and other cases to a similar effect, holding that where the party seeking relief is restricted to his remedy at law for damages and must necessarily proceed upon the theory he is a creditor of the deceased, he must present claim therefor within the prescribed time. Defendant's contention is without force in the present situation since she overlooks the circumstance that Delfelder and the other cases to which she makes reference do not relate to the enforcement of a contract to devise or bequeath property, which subject as noted by plaintiff was discussed in Hawkey v. Williams, 72 Wyo. 20, 261 P.2d 48, 68, where Judge Riner quoted 4 Page, Wills, § 1756, p. 935 (Lifetime Edition)—now 1 Bowe-Parker: Page, Wills, § 10.50, p. 548 (1960)—to the effect that under the major-

ity holding a promisee attempting to enforce a contract to devise or bequeath property need not comply with the provisions of a statute requiring presentation of a creditor's claim. It must be noted that the Hawkey case is not fully in point since it deals with an action for specific performance rather than one for damages for breach of contract as in the instant litigation. Nevertheless, the defendant's contention that there is a failure of proof as to the presentation of the creditor's claim cannot be countenanced, as the pretrial memorandum was specific in incorporating within it plaintiff's pretrial conference memorandum which recited the filing of the creditor's claim and the rejection thereof. In Dixon v. Credit Bureau of Douglas, Wyo., 419 P.2d 707, 709, we said under Rule 16, W.R. C.P., this limiting of the issues of trial by the court controlled the subsequent course of the action, and "It is manifestly improper that there now be raised another issue." 1A Barron and Holtzoff, Federal Practice and Procedure, p. 848 (1960), states that where "an admission or agreement concerning a factual issue is made and carried into effect by * * * [pretrial] order of the court, unless the order is thereafter modified by the court, the issue stands as fully determined as if adjudicated after the taking of testimony."

## ADMISSION OF MAREN PANGAROV TESTIMONY

■ Defendant urges as error the court's admission of the testimony of plaintiff's father, Maren Pangarov, to which she had objected on the ground that it related to the contract and transactions of a deceased person and was prohibited by § 1-140, W.S.1957. Her reasoning is that under the pleadings and issues of the case plaintiff's claim was based on an alleged contract between decedent and Maren Pangarov. Reference is made to a number of encyclopedic authorities purporting to indicate that plaintiff's father would here be a real party in interest, and if such, disqualified under the statute. It is unnecessary to identify or discuss these references

since they are quite general and seem to focus on the holding in Kessler v. Kessler, Wyo., 380 P.2d 770, part of which counsel quotes with the intimation that it is applicable here. We find the facts in the Kessler case are so dissimilar to those now before us that the drawing of an analogy is unwarranted. This is especially true since the weight of authority holds that one entering into a contract for the benefit of a third party is not an incompetent witness to testify in respect thereto in the beneficiary's action against the estate. Annotation, 149 A.L.R. 1130, 1132; 58 Am.Jur. Witnesses § 297. That rule has been aptly applied in Sussman v. Barash, 157 Colo. 124, 401 P.2d 608, 610–611. No reason is pointed out to us why it should not govern in the present situation, and we observe no error in the court's ruling.

### ADMISSION OF SWANTON TESTIMONY

Defendant objected to the testimony of William Swanton, an attorney who testified that he had prepared a prior will for the decedent, with another person witnessing it at testator's request, and that decedent subsequently destroyed that will, Swanton since then without avail having looked for a copy of it. The court's overruling of the objection is now raised as error, it being contended that such testimony violated a privileged and confidential communication and that the result was erroneous and extremely prejudicial to the defendant.

This challenge presents a question for which no routine solution is immediately available, principally because the combination of factors in the situation here disclosed are not common. In that connection, the cases offered by the defendant to support the claim of error are of minimal benefit and none relate to a situation in which an attorney drafted a deceased's will, later witnessed its publication, and was subsequently called to testify on behalf of a claimant against the estate. There are extant holdings which would not seem to substantiate the claim of error here. In

re Loree's Estate, 158 Mich. 372, 122 N.W. 623, 625; In re Ford's Will, 135 Misc. 630, 239 N.Y.S. 252, 254–256; McCormick, Evidence, p. 200 (1954). However, we find it unnecessary to resolve the point at this time since there was substantial evidence before the court disclosing the identical situation presented by the attorney's testimony, that is, the deceased made a will with the plaintiff as beneficiary and later revoked this will, leaving her out of his bounty. The evidence concerning the making of the former will is to be found in the testimony of Ruby Drazick:

"Q. Where were you, Miss Drazick, when you learned from Mr. Nichols that he had made a new will * * *? A. In my office.

"Q. Approximately what date? A. I don't remember when in February Marie died, but it was shortly after her death in 1955.

"Q. Was anyone else present at this time? A. No. Just Mr. Nichols and I were there.

"Q. What did he say with regard to his will? A. He said that he had just made a new will, * * * he said that he had left his property to both of his nieces, Tsetsy Pangarova and Peka, her sister * * *."

To a similar effect was a letter written by the deceased February 29, 1956, to plaintiff in which he stated, "Tomorrow I will go to make a new will, I will make it all to you to be left to you (as my beneficiary). If something bad should happen to you, Peka will follow after you * * *." A subsequent letter written by the deceased March 9, 1956, to his brother Maren stated, "Day before yesterday I made a new will on my estate. * * * To the daughter of Marie and her grandchildren, all three I sign in my will to get each of them one dollar. For if they come to contest the will, then each of three of them will gets one dollar and all rest of it I signed Tsetsy to get. If she * * * don't come and * *

is not here with me by my death, then Peka, Sashko and Marincho will get my estate by the will. The Casper Nat'l Bank will take care of my estate up to 20 years waiting period * * *." The admissibility of these letters we will discuss later.

■ It is inherent in the entire litigation that this 1956 will was later revoked by the testator's making a new will in which plaintiff was not mentioned. It follows that the admission of Swanton's testimony was cumulative only and did not constitute reversible error even if the admission had been improper. Northwest States Utilities Co. v. Brouilette, 51 Wyo. 132, 65 P.2d 223, 234, 69 P.2d 623; Cronberg Bros., Inc. v. Johnson, 29 Wyo. 11, 208 P. 446, 449; 5 Am.Jur. 2d Appeal and Error § 800; 5A C.J.S. Appeal and Error § 1724.

## DAMAGES

■ Defendant maintains that plaintiff failed to prove damages and seems to imply therefore, without so averring specifically, that the verdict and judgment are subject to reversal for this reason. It is unfortunate that the argument of both litigants on this aspect is amorphous, cases being cited by the defendant for various pronouncements without any claimed relation of the principles to the case before us, while plaintiff concedes she made no attempt to prove the value of the estate except the presentation of the amount listed in the inventory as returned by the appraisers of the estate without advancing authorities to justify its sufficiency. Nevertheless, that sum would be prima facie the value of the estate as of the time of death, minus the liabilities, costs, and expenses of administration. Further, the plaintiff by stipulation with defendant, which the court crystallized in its pretrial order, limited herself in recovery to a sum not to exceed one-half of the value of the estate, which we take to be the net value of the estate at the time of the death, less just debts and proper expenses of administration. If as defendant now infers the the amount of the jury verdict exceeds one-half of the net value as finally determined

in probate, upon such showing, a diminution of the judgment would be required so that there would be compliance with the stipulation and pretrial order. With this protection, defendant has no legitimate cause for complaint.

## FAILURE TO ESTABLISH CONTRACT

■ The alleged error most emphasized by defendant is plaintiff's failure to establish a contract, a matter which was centric in the former appeal and which we discussed at length in that decision. The evidence in the first and second trials being substantially the same, we view our former analysis as relevant in the consideration of this feature. Defendant's argument calls attention to our recognition in the original case that the evidence offered in proof of an oral contract to make a will should be clear and convincing, and that while this does not connote proof beyond all reasonable doubt, the rule requires something more than a mere preponderance. Pangarova v. Nichols, supra, 419 P.2d at 695. Primarily defendant argues that the alleged letters which were admitted into evidence should have been received for no purpose other than the mere writing of the decedent, noting that the only foundation existing at the time of their admission was that the documents contained the handwriting of the decedent and that the translations were substantially correct. She says there was no evidence of their being mailed or received and quotes from Harper v. Wilson, 10 Cir., 46 F.2d 785, 787:

> "The letters bear dates extending from November 8, 1916, to July 12, 1924. They show that Harper was advising and assisting Wilson in obtaining the placer locations and the leasing permits, and they contain offers to divide the avails, but there was no competent testimony that Wilson mailed them or that Harper received them.
>
> *  *  *  *  *  *
>
> "There was no competent testimony that Wilson mailed or parted with the letters.

No letters from Harper were introduced. The letters of Wilson, standing alone, fell short of establishing a joint adventure, whereby Harper was to share in the royalties from the lands on which the permits here involved were issued. And the whole of the evidence was insufficient for that purpose. The bill was properly dismissed as to the administratrix."

We find that holding to be inapplicable to the present situation. It is true that there was no competent testimony that the deceased Nichols had mailed the letters or that plaintiff (or plaintiff's father) had received them, although apparently if objection had not been made to a particular answer of Maren Pangarov in his deposition, it would have been adduced that he had "sent all the letters to America" which he had received from decedent regarding his efforts to secure passage of plaintiff. Nevertheless, when these exhibits were received in evidence, Ruby Drazick was on the stand. She had testified as to her first meeting the deceased in about 1937 when she worked in Senator Schwartz' office. At that time she had been told he had a niece in Bulgaria whom he was thinking of bringing over, wanting to adopt her as his daughter. Between 1937 and 1946 she saw Mr. Nichols two or three times a month and in their conversations his niece Tsetsy was often referred to. In about 1947 she began writing letters for him to the niece because he did not write in the English language. Miss Drazick, of course, was able to identify the letters she had typed for deceased, some of which she had mailed to plaintiff, but as to those in his handwriting, to which objection was made, she was able only to identify them as his handwritten letters addressed to his niece or brother. Under such circumstances, the holding of the Harper case is inapposite and the identified letters were properly admitted for all purposes.

Defendant further argues various ramifications of this general phase, e. g., that plaintiff did not establish an offer with the required degree of certainty; that ordinarily the act which constitutes the consideration (sufficient to support a contract) must be at the instance of the promisor, and must be regarded by the parties as consideration; that under the letters any obligations required of the plaintiff were so indefinite "that it would be impossible to adequately determine for the formation of a contract"; and that where, as here, there is a failure to perform it has been held that such failure terminates an agreement to will property and relieves decedent from his obligations. Defendant further argues that plaintiff did not show legal excuse for her nonperformance nor that the decedent prevented her from performing. Such argument although casually alluding to general legal principles relates inherently to factual aspects which could well have appealed to the jury, but it cannot affect the matter here unless we are willing to hold that such questions were questions of law and as such could not properly be submitted to the jury. This we are unwilling to do. Basically the evidence adduced in the case before us was the same as that in the first trial. On appeal this court said that the question of whether plaintiff by way of conduct and performance had accepted the offer of decedent was primarily a question of fact, and that the actions and conduct of the defendant and decedent's failure to obtain her co-operation, as represented, did not constitute an excuse for decedent's failure to meet his obligations. We perceive no reason for the application of a different rationale now.

Defendant lists certain testimony not presented at the first trial to the effect that trouble started between plaintiff and defendant immediately following plaintiff's arrival when plaintiff commenced quarreling and arguing about the fact that decedent had married before she arrived, later urging deceased to divorce his wife, whom she referred to as a "dirty Greek," and physically assaulted decedent. However, such testimony was contradicted by plaintiff, who testified that on the evening of her

arrival while she was showering she heard the loud voices of her aunt and uncle, her uncle repeatedly calling defendant "S.O. B."; that he was disturbed from defendant's fighting with him every day and night; that he did not have regular sleep because of too much trouble "giving his wife to him"; that decedent said to plaintiff he had made " 'the biggest mistake in my life to marry this dirty Greek,' " that " 'She marry me to get my money. She is Greek and she try to get all Bulgarian money to her Greek relatives. * * * all the property on my name and the will she knows before she got married to me, the will is yours. * * *' * * * he mention that she has been all the time bother him, insist that he to change the will and have mutual agreement of the money of the estate or property after they got married"; that her uncle was very unhappy she was leaving his home; that it was defendant's decision that she should leave; and that defendant told her to go, threatening to kill her.

■ It should perhaps also be observed that defendant in arguing the effect of decedent's marriage subsequent to any understanding between him and plaintiff asserts that defendant knew of no prior dealings between the decedent and his niece but plaintiff also disputes this. It is axiomatic from frequent statements in our jurisdiction that where testimony is conflicting the reviewing court will give consideration only to that of the prevailing party.

■ To bolster her contention that the completion of the contract was impossible, defendant quotes only from an irrelevant portion of the previous opinion in the case and adds a statement from 1 Bowe-Parker: Page, Wills, p. 461 (1960): "If one of the provisions of an entire and indivisible contract is illegal, none of the other covenants can be enforced." We are not required to notice claimed error unsupported by available precedent or cogent argument. Stolldorf v. Stolldorf, Wyo., 384 P.2d 969, 973.

## DIRECTION OF VERDICT AND MATTER OF INSTRUCTIONS

■ Counsel does not separately present argument that the court should have directed verdict for the defendant but states only that for reasons elsewhere set forth the court erred in not directing the verdict because of lack of proof. We have alluded to this contention previously and consider that there was sufficient proof to justify the court's having permitted the matter to go to the jury and that there was substantial evidence upon which the jury could have found that a contract existed.

Defendant's objections to instructions involve 5, 6, 9, 11, and 12. As to Instruction 12 her position seems to be that because of lack of proof as to "net value" and "damages" the widow may very well be deprived of a full one-half of the estate. For reasons heretofore noted, it is unnecessary to further discuss this matter.

■ Defendant criticizes Instruction 5 as enabling plaintiff to prove her contention by a preponderance of the evidence when in fact a stricter rule should have been applied, but at the time of the trial even defendant admitted that the matter was explained in other instructions and her concern was only with the possibility that the jury might be confused. If this instruction is read and construed in conjunction with the others which were given, there would be no reasonable cause for complaint, and this is particularly true in the light of Instruction 6, which after stating that plaintiff's proof must be clear and convincing concluded, "The plaintiff's burden is something more than a mere preponderance of the evidence in this respect, but this does not require the plaintiff to prove her case beyond all reasonable doubt." We hold there to have been no error.

■ Defendant claims Instruction 6 told the jury that they could find an offer by simply reviewing the letters introduced and determining if they expressed a pur-

pose and urges this to have been error as the instructions provided no other definition of offer. We have carefully reviewed each paragraph of the instruction and find defendant's position untenable. Apparently the sentence which defendant refers to is, "In this case there is evidence in the handwriting of the deceased, which you may consider *as to* his offer to make a contract." (Emphasis supplied.) While the thought of that sentence may have been more artfully expressed, the meaning was clear, and we view defendant's objection to be groundless.

■ Instruction 9 read, " * * * the removal of an alien from the land of his birth and from his parents and relatives to the United States, may constitute sufficient consideration to support a contract," and defendant argues that the instruction selected one piece of the evidence, commented upon it, thus placed undue emphasis upon only a portion of the case—invading the province of the jury—and constituted an improper definition of "consideration," quoting as a definition therefor that set out in 17 C.J.S. Contracts § 70. Plaintiff responds that this instruction simply stated the law enunciated in Pangarova v. Nichols, supra, which, in turn, is based upon law from other jurisdictions so holding. Although we are of the view that it is not propitious to extract portions of an appellate court opinion to be used as an instruction even though the identical case is concerned, under the circumstances here no prejudicial error is shown—even were we to hold arguendo that Instruction 9 should not have been given. Further, it is to be noted that defendant did not herself present any other instruction on the subject at the time of the trial.

■ Instruction 11 read, " * * * if the contract provided that Tsetsy Pangarova, the plaintiff herein, had to perform and do certain things and services or other conditions and if you find that Tsetsy Pangarova did not perform these things, serv-

ices or conditions, then you must find against plaintiff and for the defendant, unless you find that she was excused from performance by defendant or those for whom he was responsible." Defendant argues that in this instruction there was no reference to decedent whatsoever and that the defendant, as the executrix of the estate, had nothing whatever to do with the contract or its performance. It would appear obvious that the use of "defendant" in the phrase "that she was excused from performance by defendant or those for whom he was responsible" was a stenographic error, "decedent" having been intended, and that had this been drawn to the court's attention at the time of trial it would have been corrected, but in any event defendant did not observe any miswording at the time of presentation of objections regarding the instructions since she then asked only that the final six words be stricken and that "or someone for *him*" (emphasis supplied) be substituted therefor. We find no reversible error because of this matter.

Defendant's statement concerning the court's failure to give her proposed Instructions A, B, C, D, E, F, and G, consists of five sentences, and consequently, we do not propose to examine each of the instructions individually. Suffice to say that after careful examination of those which were given to the jury we cannot hold that reversible error occurred in their refusal.

From a careful analysis of the record together with the views presented by the briefs and argument of counsel, we conclude that (1) there was presented in the trial court evidence of promises and understandings between the deceased Nichols and his niece, Tsetsy Pangarova, which though not concentrated in a single document, warranted the case's having been submitted to the jury, (2) the evidence was sufficiently substantial upon which the verdict could be predicated, provided such amount was not over one-half of the net value of the

estate at the time of death less just debts and proper expenses of administration, and (3) no prejudicial errors occurred during the trial which justify a reversal.

Affirmed.

Mr. Justice McINTYRE (dissenting).

When this case was before us previously I was of the opinion plaintiff had not made out a case entitling her to damages. My views were expressed in a dissent. See Pangarova v. Nichols, Wyo., 419 P.2d 688, 698–704.

As stated in the majority opinion, the evidence on retrial was not substantially different from the evidence previously before us. Inasmuch as the reasons for my views were fully expressed in my previous dissent, it is not necessary to express them again. What I said in the former appeal is still applicable, and my views have not changed.