X, a Minor Girl, Appellant
(Plaintiff below),

v.

Y, a Minor Boy, Appellee
(Defendant below).

No. 3865.[1]

Supreme Court of Wyoming.

March 26, 1971.

---

[1]. Upon handing down this opinion the court entered its order as follows:

"It appearing to the court that the interests of the innocent illegitimate child would be best served by not publishing the names of the parties hereto in the printed opinion;

"IT IS THEREFORE HEREBY ORDERED that the opinion handed down this date be designated as:

' "X", a Minor Girl, Appellant (Plaintiff below), v. "Y", a Minor Boy, Appellee (Defendant below),'

provided that nothing herein shall preclude any person from examining the records or documents on file herein, they being public records."

Louis A. Mankus, Cheyenne, for appellant.

Carl L. Lathrop of Lathrop, Lathrop & Uchner, Cheyenne, for appellee.

Before McINTYRE, C. J., and PARKER, McEWAN, and GRAY, JJ.

Mr. Justice McEWAN delivered the opinion of the court.

This was an action under the Wyoming "Uniform Illegitimacy Law" to establish paternity and compel payment of the expenses of the mother's pregnancy and confinement, maintenance, education and support of the child. The district court entered judgment for the defendant and the plaintiff mother appealed.

On December 9, 1968, pursuant to §§ 14–59 to 14–96, W.S.1957, "Uniform Illegitimacy Law," the plaintiff filed a complaint in the justice court alleging that she was pregnant with a child expected to be born in January 1969; that said child was begotten by the defendant and that the defendant is the father of said child; and that said child will be born out of wedlock and illegitimated. Whereupon, the justice of the peace issued a warrant for the apprehension of the defendant. The defendant was apprehended December 11, 1968, and appeared before the justice of the peace and was released upon posting bond.

The baby was born January 21, 1969. A hearing was had before the justice of the peace on March 31, 1969, and, as a result, the defendant was bound over to the district court and bond set. The defendant posted bond and was released to appear at the next term of the district court. The matter was heard in the district court, sitting without a jury, on December 19, 1969. The district court, having heard the evidence adduced and the arguments of the respective parties, found generally in favor of the defendant and against the plaintiff, and ordered that the plaintiff take nothing by virtue of her complaint, and that the defendant have judgment thereon. The plaintiff appealed to this court.

## THE FACTS

The parties met during the summer of 1967 while they were attending summer school prior to commencing their senior year in high school. At the time they met both parties were 17 years of age. They began going "steady" in July of 1967, and he gave her his class ring at that time. They discussed getting married when they graduated from high school. They continued going steady until January of 1968, at which time they "broke up" for about three weeks and he took his ring back. They resumed going steady and he again gave her his class ring. The plaintiff testified they continued going steady until the first week in May 1968, while the defendant testified the last time they saw each other was March 12, 1968. The plaintiff testified that she had intercourse with the defendant on two occasions in the latter part of March and first part of April at her home, and, as a result, she became pregnant, and that she was a virgin at the time and had not had intercourse with anyone else. The defendant testified that he had intercourse with the plaintiff on one occasion during the 1967–68 Christmas vacation, and that he began going steady with another girl the last part of April 1968. He married the other girl on October 20, 1968.

The plaintiff discovered she was pregnant during the last part of May 1968, and the baby was born January 21, 1969. There were no medical or expert witnesses. The only witnesses were the plaintiff and her mother, the defendant, his wife, his father and his employer.

We must first determine if there was sufficient evidence to support the trial court's finding for the defendant.

■ The parties agreed that the proceedings are civil in nature and paternity may be proved by a preponderance of the evidence, and we believe this is correct. Section 14–75, W.S.1957, provides "The trial in the district court * * * shall be conducted as in other civil cases." Where the purpose of the proceeding is simply to compel the putative father to support his child, it is almost universally held to be a civil proceeding by nature and governed by the rules of procedure applicable to civil actions. Johnson v. District of Columbia, D.C.App., 271 A.2d 563, 564; 10 Am.Jur. 2d, § 74, p. 901; 10 C.J.S. Bastards § 32, p. 143.

The plaintiff argued that paternity may be presumed even by the uncorroborated testimony of the mother but here her testimony was corroborated; that her testimony showed she did not have intercourse with anyone else; that she was a virgin at the time she had intercourse with defendant; and that defendant was the father of the child.

■■ This may be true, but the plaintiff ignores a fundamental rule of appeal, that is, that the evidence of the successful party is assumed to be true and is given every favorable inference which may be reasonably and fairly drawn from it while leaving out of consideration entirely the evidence of the unsuccessful party. Also, the trial court is the sole determiner of the credibility of the witnesses. Stock v. Roebling, Wyo., 459 P.2d 780.

■ Thus, the trial court could—and apparently did—believe the testimony of the defendant, and disbelieve the plaintiff's

testimony concerning the two acts of intercourse between the parties in April or May. Defendant said the one and only time he had intercourse with the plaintiff was over the Christmas vacation period of 1967–68. The baby was born on January 21, 1969, or in excess of 12 months after the defendant testified he had intercourse with the plaintiff. The court may take judicial notice that the normal gestation period is about 280 days. Boudinier v. Boudinier, 240 Mo.App. 278, 203 S.W.2d 89; 22A C.J.S. Criminal Law § 539, p. 250; 31A C.J.S. Evidence § 79, p. 88. Thus, using the normal gestation period, plaintiff would have become pregnant approximately 280 days prior to January 21, 1969, or about April 15, 1968. For the defendant to have caused the plaintiff to have become pregnant from the Christmas holiday occurrence, the gestation period would have to have been in excess of 12 calendar months. Such greatly expanded period is not of such common knowledge as to warrant judicial notice. 31A C.J.S. Evidence § 79, p. 88. It should also be remembered that where testimony is conflicting the reviewing court will give consideration only to the testimony of the prevailing party. Nichols v. Pangarova, Wyo., 443 P.2d 756.

We, therefore, believe there was sufficient evidence to support the decision of the trial court.

■ The plaintiff also argued that "The Court erred, in admitting, and considering, Hearsay, Immaterial Evidence and conclusions, over Objection of Appellants Counsel." Plaintiff points to certain testimony of the defendant in which he recited a conversation between himself and plaintiff's father. The defendant testified the plaintiff's father wanted him to marry the plaintiff and that the father said " * * * 'All you have to do is marry her and give the baby a name.' " Objection was made by plaintiff that it was hearsay. Plaintiff argues that the questions and answers made the whole situation look like some sort of plot to find a name for the baby regardless of parentage. We

do not place this interpretation upon the testimony and do not believe that it implies there was a plot to find a name for the baby regardless of parentage. It is also noted that the plaintiff's mother, on cross-examination, testified without objection to a conversation she had with the defendant's father in which marriage was discussed so as "To give the baby its rightful name * * *." It was apparent from the record that the parents of plaintiff contacted the defendant in May or June and told him their daughter was pregnant and they wanted him to marry her. The defendant testified without objection that on the last of May plaintiff told him she was pregnant and she wanted him to marry her, but that he told her it wasn't his child and he wasn't the one to marry her. These facts had been established in the record prior to the time the defendant testified as to the conversation with the plaintiff's father. The defendant's testimony was cumulative only and did not constitute reversible error even if the admission was improper. Nichols v. Pangarova, Wyo., 443 P.2d 756, 761.

 The defendant testified that while he was at a party on May 4, another boy told him he was going steady with the plaintiff. The plaintiff objected to this testimony and asked that it be stricken as hearsay. The trial court ruled to let it stand, and the plaintiff argued that this was prejudicial. The trial court should not have received this testimony, but we do not find it prejudicial. The presumption on appeal, in cases tried by the court without a jury, is that in reaching its decision the court disregarded the improperly admitted evidence unless the record affirmatively shows that the trial court's decision was influenced by the improperly admitted evidence. As stated in 5 Am.Jur.2d, Appeal and Error, § 799, p. 241, citing Russell v. Curran, 66 Wyo. 173, 206 P.2d 1159:

"Since a trial judge is supposed to be able to 'sift the wheat from the chaff,' in a case tried by a court without a jury the admission of incompetent evidence is not presumed to have been prejudicial."

The *Russell* case at 1167 cites a previous Wyoming case [2] which says:

"Stated in another way and in general terms, the great weight of authority seems to support the principle that, where there is sufficient competent evidence to sustain a finding in a case tried by the court without a jury, admission of incompetent evidence is not ordinarily a ground for reversal."

See also In Re Shreve, Wyo., 432 P.2d 271 at 273.

We believe that the record does not affirmatively show that the trial court's decision was influenced by the improperly admitted evidence, and we hold there was sufficient competent evidence, without the erroneous admitted testimony, to sustain the judgment of the trial court.

Affirmed.

2. Yount v. Strickland, 17 Wyo. 526, 101 P. 942, 944, cited in Williams v. Yocum, 37 Wyo. 432, 263 P. 607, 611.