John DAVID, Administrator c.t.a. of the Estate of Erwine H. Stewart, a/k/a Erwine Stewart, a/k/a E.H. Stewart, deceased, and John David, individually, Plaintiff-Appellee,

v.

POWDER MOUNTAIN RANCH, a Co-Partnership, Defendant-Appellant,

and

W.R. Lloyd a/k/a Dick Lloyd; Bertha Lloyd; Harold Lloyd; Sidney D. Lloyd; Powder Mountain Ski Corporation, a Colorado Corporation; Debtor, Bankrupt No. BK–LV–77–896; Ivan Kladder; Historical Museum and Institute of Western Colorado; First National Bank of Grand Junction; Gena M. Harrison, Treasurer of Mesa County, Colorado; William Nutting, Kate Ann Nutting; George Nisbet; Rena Nisbet; Clifford H. Jex; Lois M. Jex; the Town of Palisade, a Municipal Corporation; Redstone Corporation, a Colorado Corporation; George J. Hronzy; Irene M. Hronzy; Chet Nash and Cheryl Nash; and All Unknown Persons Who Claim an Interest in the Subject Matter of This Action, Defendants.

No. 81CA0593.

Colorado Court of Appeals, Div. II.

Sept. 16, 1982.

Rehearing Denied Oct. 14, 1982.

Reams & Kaye, Warren R. Reams, Bruce J. Kaye, Grand Junction, for plaintiff-appellee.

Traylor, Palo, Cowan & Arnold, Charles J. Traylor, Robert S. Traylor, Grand Junction, for defendant-appellant.

SMITH, Judge.

Defendant, Powder Mountain Ranch (Ranch) seeks reversal of a directed verdict in favor of plaintiff, John David (David), quieting title to certain real property in David's name. We reverse and remand for a new trial.

In 1956, Erwine H. Stewart entered into an agreement with W.R. "Dick" Lloyd whereby he agreed to convey certain lands to Lloyd in return for yearly payments of a fixed sum until Stewart died or the payments totalled $150,000, whichever occurred first. Deeds were accordingly executed and delivered. In 1968, an attorney, one Nelson, prepared an "Amendment to Agreement" wherein Stewart agreed to transfer more property to Lloyd in return for larger yearly payments.

In September of 1971, Stewart died, leaving a will, naming David as primary beneficiary and devisee of all Stewart's property "of every kind and nature, whether now owned or hereafter acquired." Nelson, who had prepared the will, filed it. Nelson then filed a small estate proceeding which did not include any real property and David succeeded to Stewart's estate.

In November of 1971, Lloyd sold most of the property he had received from Stewart to Powder Mountain Ski Corporation. In 1973, the Ski Corporation sold the land to the Ranch. In 1974, the Ranch discovered that several tax notices to property it ostensibly then owned were still appearing in the name of Stewart. Upon consulting with Nelson, it was decided that the Ranch would refrain from paying the taxes on such property, and then would acquire that property by tax sale. This was seen as the simplest way to correct an apparent omission of a description of the Rapid Creek property in the 1968 amendment to the Stewart-Lloyd agreement.

David discovered that the Rapid Creek property was still in Stewart's name in 1977, and immediately petitioned for and proceeded with probate of the 1971 will. He was appointed administrator c.t.a. of Stewart's estate, redeemed the taxes on the Rapid Creek property, and commenced an action to quiet title in that property.

The Ranch claimed a superior right and interest in the property on the grounds that Stewart had intended to transfer the Rapid Creek property to Lloyd, but that a scrivener's error had omitted a description of the property from the legal description of all property transferred by the 1968 amendment to the Stewart-Lloyd agreement. The subsequent transfers of the property from Lloyd to the Ski Corporation and from it to the Ranch, all prepared by Nelson, continued to omit a description of the Rapid Creek property.

Accordingly, the Ranch counterclaimed against David, requesting reformation of the conveyances and an order quieting title in it and against David.

At trial, the Ranch attempted to prove grounds for reformation of the deed by testimony of Nelson, Lloyd, and one Nisbet, who was a former partner of Stewart in some of the Rapid Creek property. This testimony was rejected by the trial court, relying on the bar of the Dead Man's Statute.

I.

On appeal, the Ranch asserts that the trial court erred in barring the testimony of Nelson, Lloyd, and Nisbet on the basis of the Dead Man's Statute. We agree.

■ The Dead Man's Statute, § 13–90–102, C.R.S.1973 (1981 Cum.Supp.), bars testimony of any person "directly interested in the event" which is the subject of a "civil action suit or proceeding." The test of the interest of a witness is whether he will gain or lose by the direct legal operation of the judgment. *Sussman v. Barash,* 157 Colo. 124, 401 P.2d 608 (1965); *Popejoy v. Bahr,* 67 Colo. 385, 176 P. 947 (1919). Moreover,

"the disqualifying interest within the meaning of the Dead Man's Statute is determined as of the time the testimony sought to be excluded is offered." *Gaddis v. McDonald,* 633 P.2d 1102 (Colo.App.1981). Therefore, it must be determined whether Nelson, Lloyd, or Nisbet stood to gain or lose, by whatever judgment was entered, at the time their testimony was offered.

Judgment in this case would operate either to quiet title in David and void any interest in the Rapid Creek property claimed by the Ranch or vice versa. In order to gain or lose by the direct operation of the judgment, it must appear that Nelson, Lloyd, or Nisbet held some interest in the property which could be affected, adversely or favorably, by a quiet title decree for either David or the Ranch.

■ With regard to Nelson, there was no evidence in the record which would indicate that he had any connection with the property other than as having acted as an attorney in the drafting of the documents of transfer. We are aware of only one instance in which an attorney, by reason of his services, was determined to have gained an interest in the outcome of the litigation to warrant disqualification of his testimony. This arises when the attorney has entered into a contingent fee agreement with his client. *Lee v. Leibold,* 102 Colo. 408, 79 P.2d 1049 (1938). This is not the case here. Further, even the possibility of a suit against Nelson for the omission would not be sufficient to establish a disqualifying interest on his part. *See In re Estate of Enz,* 33 Colo.App. 24, 515 P.2d 1133 (1973). Thus, since Nelson had no interest in the outcome of this litigation, we hold that it was error for the trial court to bar Nelson's testimony as being testimony of an interested person.

It was established at trial that both Lloyd and Nisbet at one time had substantial interests in the Rapid Creek property. However, the evidence clearly established that these interests no longer existed *at the time their testimony was offered.*

■ We find no evidence in the record which would indicate that Nisbet had any remaining interest in the property. The trial court merely stated that it would infer that there might be some remaining interest. However, the interest of a witness *must be shown* before the bar of the statute may be invoked. *Klein v. Munz,* 87 Colo. 223, 286 P. 112 (1930).

■ The record reveals abundant evidence to show that Lloyd had divested himself of any interest in the property before his testimony was offered. In 1978, Lloyd assigned all his interests in the Rapid Creek property to the Ranch and entered into an agreement with the Ranch and the Ski Corporation whereby they agreed not to look to each other for redress, regardless of the outcome of the quiet title litigation. Further, Lloyd quitclaimed whatever remaining interest he might have had in the property to the Ranch in September of 1980. Thus, Lloyd had no interest in the property when his testimony was offered.

Accordingly, the trial court also erred when it found that Lloyd and Nisbet were persons interested in the event so as to bar their testimony under the Dead Man's Statute.

## II.

■ The trial court also found that since Nisbet and Lloyd were named as defendants, their testimony was barred under § 13–90–102, C.R.S.1973. We disagree.

In a quiet title action, all those who have or *may* have interests in the property must be named in the suit. However, the mere fact that all those named as defendants might be necessary parties to the action does not make them parties to the issue or establish their interest in the outcome.

"There is a vast difference between those who are required to be made formal parties, or those who have no personal interest in the result of the controversy, and those who are required to be made parties because of their respective personal and property interests involved in the issue to be determined." *Risbry v. Swain,* 124 Colo. 567, 239 P.2d 600 (1951).

Neither Lloyd nor Nisbet were under any obligation to defend, and as the preclusion of the Dead Man's statute contemplates only parties with involvement in the issues to be litigated, Lloyd and Nisbet should not have been denied the right to testify. *Risbry, supra; Klein, supra.*

Accordingly, the judgment is reversed and the cause is remanded for a new trial.

BERMAN and TURSI, JJ., concur.